(115 App. Div. 354)

## CROCE v. BUCKLEY.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

1. MASTER AND SERVANT — INJURIES TO SERVANT — SUFFICIENT APPLIANCES — STATUTORY REQUIREMENTS—SCAFFOLDINGS.

A freight elevator used by workmen as a place on which to stand while cutting a hole in a wall is a scaffold, within the meaning of Laws 1897, p. 467, c. 415, § 18, providing that an employer shall not furnish a scaffolding which is unsafe or improper.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 207.]

2. SAME—SUFFICIENCY.

A freight elevator having an entrance from four floors, which is in charge of no particular person, and is so arranged that it can be started

in motion from any floor by pulling a rope reached through the entrance from the outside of the shaft, though it may be a suitable freight elevator, is not a safe scaffolding on which to place men to work at cutting a hole through the wall, within the meaning of Laws 1897, p. 467, c. 415, § 18, providing that an employer shall not furnish a scaffolding which is unsafe or improper.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 207, 208.]

3. SAME—SAFEGUARDING DANGEROUS APPLIANCE—ARRANGEMENT WITH OTHERS.

An arrangement by a contractor with the superintendent of a building, that a freight elevator on which the contractor placed men to work at cutting a hole through a wall, and which was liable to be moved by others, should be used exclusively by such workmen, does not constitute a discharge of the duty imposed by Laws 1897, p. 467, c. 415, § 18, providing that an employer shall not furnish a scaffolding which is unsafe or improper.

4. SAME—ACTIONS—BURDEN OF PROOF.

Under Laws 1897, p. 467, c. 415, § 18, providing that an employer shall not furnish scaffolding which is unsafe or improper, one suing to recover for injuries sustained by her intestate through the unexpected starting in motion of a freight elevator used as a scaffold, and which was liable to be set in motion by others than those working thereon, is not required to prove as part of her case the cause of such sudden starting.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant §§ 894–900.]

5. SAME—EVIDENCE—SUFFICIENCY.

Plaintiff's intestate, having been placed with another on a freight elevator to cut a hole through the wall, was injured by the sudden starting of the elevator to the top of the building, and the breaking of the supporting rope. The elevator was so arranged that it could be started from any floor without going upon it. A contractor had arranged for the exclusive use of the elevator by his men, but, without his knowledge, his agreement was not entirely carried out. Nothing appeared as to the cause of the elevator's sudden start beyond the fact that it was not started by those upon it. *Held* sufficient to present a question as to whether the contractor had fulfilled the duty of furnishing a safe scaffold, imposed by Laws 1897, p. 467, c. 415, § 18, providing that an employer shall not furnish a scaffolding which is unsafe or improper.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 1010–1025.]

Scott, J., dissenting.

Appeal from Trial Term, New York County.

Action by Mary Croce, as executrix of Andrew Croce, deceased. From a judgment entered upon dismissal of the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before O'BRIEN, P. J., and INGRAHAM, CLARKE, HOUGHTON, and SCOTT, JJ.

Richard J. Donovan, for appellant.
Theodore H. Lord, for respondent.

O'BRIEN, P. J. From the facts, as stated in the opinion of Mr. Justice SCOTT, it is evident that the elevator was a scaffold within section 18 of the labor law (chapter 415, p. 467, Laws 1897), which is as follows:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure,

shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed or operated as to give proper protection to the life and limb of a person so employed or engaged."

As the elevator could be set in motion from any one of the four floors of the building by simply pulling a rope, it was not, I think, a safe and proper scaffold, within the contemplation of the above statute, even though it be admitted that it was in sound condition as an elevator, and that, while at rest, it was suitable for the use to which it was put, because, unless the power were shut off, it was liable to be moved. Nor was the arrangement made by the defendant with the superintendent of the building for its exclusive use, to which defendant testified, but which it was established was not observed, a sufficient discharge of the duty imposed upon the defendant by the statute. It was unsuitable, as a scaffold, by reason of its mobility, and this was the immediate cause of the accident. It was not essential to the plaintiff's cause of action to show the cause of the sudden starting of the elevator; her case was established by showing that the scaffold, as such, was defective or improper, and that the accident resulted therefrom.

Upon the evidence there was a question as to whether or not the defendant fulfilled his duty by safeguards which would prevent the elevator being set in motion. It follows, therefore, that the judgment dismissing the complaint should be reversed, and a new trial granted, with costs to appellant to abide event.

INGRAHAM, CLARKE, and HOUGHTON, JJ., concur.

SCOTT, J. (dissenting). The defendant was a contractor engaged in doing work upon a building in the city of New York. Plaintiff's intestate was a laborer employed by him in the course of the work. Two buildings standing side by side were known, respectively, as "Nos. 310 and 312 West Thirty-Ninth street." No. 310 was four stories in height, and No. 312 was only three stories. The work upon which defendant was engaged was the erection of an additional story on No. 312; and, in the course of this work it became necessary to cut a hole through the brick wall between the two buildings. No. 310 was used as a furniture warehouse, and in it was a freight elevator running to the top of the building, and which was commonly used for carrying furniture up and down, and was apparently used at will for this purpose by the employés in both buildings. It ran to the top of the higher building, and on each floor below the fourth there were entrances to it from both buildings. There was no conductor or other person especially charged with running the elevator, but any one could start it up or down, and stop it by pulling on a wire rope; and to do this it was not necessary that the person operating it should go on to the elevator, since the rope controlling it could be reached from the outside.

The opening through the wall was to be made into the elevator shaft, and defendant employed one Wigmore, a mason, and plaintiff's de-

cedent, who was Wigmore's helper, to do this work. The defendant directed his workmen to stand upon this elevator while cutting the hole. He had previously seen the employés in the building using the elevator to carry the goods up and down, but, before directing the men to use it, he had obtained an agreement from the superintendent of the building that the workmen were to use it; the understanding being that the workmen were to have the absolute use of the elevator when they got ready to use it for the purpose of cutting the hole. Defendant also made inquiries as to the capacity of the elevator, and found that it was capable of upholding many times the weight that would be put upon it by reason of its use by his workmen. The men were ready to go to work at cutting the hole on a Friday morning, and at that time, in accordance with the arrangement between defendant and the superintendent of the building the elevator was run up to the top floor, and the workmen went upon it and began to cut the hole in the wall. They continued to so work safely during all of Friday, and for some hours on Saturday. During this time, apparently in violation of the agreement between the defendant and the superintendent of the building, the elevator was occasionally used by employés of the building for carrying furniture from floor to floor. Whenever it was so desired to use the elevator the employé using it would first give warning to defendant's workmen by calling out, and the workmen would suspend their work while the elevator was being used, sometimes remaining on it, and sometimes stepping off. No injury occurred to either of the workmen on any occasion when the elevator was so used. The defendant visited the work from time to time while it was in progress, but did not see any one use the elevator while his men were working on it, and did not know prior to the accident that any one did use it while his men were working on it. On Saturday morning, while the men were working in the elevator it suddenly started upwards, the car hit the wheel or the beam supporting the wheel upon which the rope ran which elevated and lowered the car; that rope broke, and the car fell to the bottom of the building inflicting upon plaintiff's decedent the injuries from which he afterwards died.

The evidence suggests no explanation whatever as to the cause of the accident. No defect in the elevator or any of its appliances is shown, and indeed it was expressly conceded on the trial, by plaintiff, that the elevator, considered with reference to its use as an elevator was in sound condition. Nor does it appear, who, if any one, was instrumental in setting it in motion, except that it was testified that neither of defendant's workmen started it. Upon this state of facts the court dismissed the complaint. It is now urged upon behalf of the plaintiff that, although safe, suitable, and proper, when used as an elevator, the car became and was unsafe, unsuitable, and improper, and not so constructed, placed, or operated, as to give proper protection to life and limb when used as a place to stand upon when working, at which time as it is insisted, it became in effect a scaffold within the meaning of section 18 of the labor law (chapter 415, p. 467, Laws 1897). With this last contention we are disposed to agree, and to hold that when hoisted up to the top story, and there used as a place upon which the

workmen were to stand while cutting the wall, the elevator became, and must be considered as a scaffolding or other mechanical contrivance furnished by defendant for the performance of the work. So considered, it was defendant's duty to exercise reasonable care and diligence to see to it that it was safe, suitable, and proper for the use to which it was to be put, and that it was so constructed, placed, and operated as to give proper protection to the life and limbs of his workmen, whom he directed so to use it; and the question is, whether or not he failed in the fulfillment of this duty. It seems to be quite obvious that, so long as it was permitted to remain, and did remain, stationary, it was entirely safe and suitable for the purpose for which it was used. It was capable of sustaining the necessary weight, and there is nothing to indicate that it was liable to sudden or other movement, without the intervention of any active agency. So far as can be seen it was as safe, when used as a scaffold, and so long as it remained stationary, as any other suspended scaffold would be. The only apparent danger attending its use, if any, was that which resulted from its mobility, and the possibility that some one might set it in motion while the workmen were using it. Undoubtedly there was, as we think, a certain danger to the workmen, if the elevator continued to be used as an elevator, while they were standing upon it and using it as a scaffold. This danger defendant undertook to guard against by obtaining the promise of the superintendent of the building that the workmen should have the absolute use of the elevator while they had occasion to use it. It may be that he was not justified in relying solely upon this precaution, and if the accident had happened in the course of the usual and customary use of the elevator by the employés in the building, a question might have been presented for the jury, whether or not the defendant should not have foreseen the possibility of such use, and taken more effective measures to guard against it than merely to rely upon the promise of the superintendent.

The defendant, however, even under the terms of the labor law, was not an absolute insurer of the safety of his workmen while working in the elevator, and was not called upon to foresee and guard against every possible contingency, however remote and improbable. He was not, therefore, bound to guard against every unexplained and unexplainable accident, such as that which did occur. At most, he can be held bound only to foresee that, notwithstanding the promise of the superintendent, the elevator might be used in the way in which it was obvious it might be used if no precaution were taken; that is, for running up and down by the employés of the building in the course of their business. Although he did not guard absolutely against this contingency, the accident did not occur, so far as the evidence shows, from any such use. True, the elevator was used by the employés in the building, and thereby, perhaps, the workmen were put in peril; but the peril from that cause never ripened into injury. What produced the accident was the sudden jerking of the elevator up against the beams; but what produced that sudden jerking up nowhere appears, and it is indulgence in the merest conjecture, without evidence to support it, to presume that it resulted from the act of some employé

in the building, or would not have occurred just the same if the most effective precaution had been taken to prevent. the employés from using it. There is nothing in the case, therefore, to justify the presumption that the accident resulted from any cause which the defendant should have foreseen, and have guarded against. The mere fact that the accident happened does not impute negligence to the defendant, since he neither constructed nor maintained the elevator. He made proper inquiry as to its weight sustaining capacity. The elevator, as an elevator, is conceded to have been safe and suitable, and, obviously, was equally safe and suitable for use as a scaffold, if permitted to remain stationary. Its mobility indicated perhaps a danger, in case it was used; but the accident did not result from such use. Therefore, if we assume that defendant was negligent in not taking more effective steps to prevent the use of the elevator, that is the only negligence of which he was guilty, and that negligence did not result in injury. Undoubtedly the defendant might have taken precautions which would have rendered the elevator immovable under any conceivable circumstances; but to hold him to this degree of responsibility would be to charge him, in effect, as an insurer. The safer and better rule is to require him to exercise only such a degree of care as should be reasonably expected from a careful, prudent, and vigilant man. So far as appears, no man however careful, prudent, and vigilant could have foreseen the particular cause which led to the accident herein involved, because we do not even yet know what that cause was.

The judgment should be affirmed, with costs.