(125 App. Div. 684.)

BOWER v. HOLBROOK, CABOT & ROLLINS.

(Supreme Court, Appellate Division, Second Department. April 24, 1908.)

1. DEATH—CAUSE—EVIDENCE.

In an action for death of a servant who sustained a fractured skull from a fall from a scaffold in a subway, evidence *held* to warrant a finding that the death was the result of the fall, caused by a defect in the scaffold, and not of a stroke of apoplexy.

2. MASTER AND SERVANT—DEATH OF SERVANT—DEFECTIVE SCAFFOLD—LABOR LAW—APPLICATION.

Where defendant in performance of a' contract to paint the iron work in a subway divided its workmen into three classes, consisting of riggers who constructed the scaffold, scrapers, and painters, and intestate, a painter, was killed by a fall from a loose plank on the scaffold, the condition of which had been observed by the foreman of the rigger gang some time before, it appearing that the plank was a part of the scaffold when intestate went thereon, defendant was responsible for its condition under Labor Law, Laws 1897, p. 467, c. 415, § 18, providing that the master shall be responsible for injuries sustained by defective scaffolding, etc.

3. SAME—CONTINUING DUTY.

The master's duty to furnish and maintain safe scaffolding, imposed by Labor Law, Laws 1897, p. 467, c. 415, § 18, is a continuing one, and, if the master intrusts performance of such duty to a foreman, the master is still liable for injuries caused by defects in its original construction, or such as occur in the subsequent prosecution of the work.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 175, 207.]

Appeal from Trial Term, Kings County. ·

Action by Adah J. Bower, as administratrix of the estate of George T. Bower, deceased, against Holbrook, Cabot & Rollins. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Affirmed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

Frank Verner Johnson, for appellant.

James M. Gray (Joseph E. Owens, on the brief), for respondent.

MILLER, J.  The plaintiff's intestate while in the employ of the defendant fell from a scaffold and within two hours thereafter died, as the plaintiff asserts, from injuries thus received. She relies on section 18 of the labor law (Laws 1897, p. 467, c. 415), to establish liability.

The defendant had a contract to paint the ironwork in the subway. Its men were divided into three gangs—riggers, scrapers, and painters. The riggers constructed the scaffolding, the scrapers scraped the iron, and the painters followed and applied the paint. The plaintiff was a painter. The scaffolding was supported by hooks fastened to the ironwork. Joists were fastened to the hooks, and planks 18 feet long, 10 inches wide, and 3 inches thick were laid upon the joists. On the day of the accident the riggers commenced the construction of the scaffolding, from which the intestate fell at half past 7. At 8 o'clock one of the scrapers was observed at work sitting upon a short plank laid across two other planks, one end extending beyond the planking and wholly unsupported. At half past 12 the deceased, with a fellow workman, returned from his dinner, entered the subway, which was dimly lighted, and went upon the scaffolding. A few minutes after he had begun work he was seen to step upon the unsupported end of the short plank, which tipped up and precipitated him·headforemost upon the track below. He was picked up unconscious, and an examination disclosed that the skull was fractured and the brain lacerated. He died without regaining consciousness. The foreman of the gang of riggers, who had entire charge of the construction of the scaffolding, observed a man at work on the short plank at half past 10, and told him to remove it. It does not appear who put the short plank on the scaffold. Said foreman testified that he did not. He assumed that one of the scrapers had done so, but testified that he did not see it done. There were several workmen in the gang of riggers. An examination of the intestate's brain disclosed that the blood vessels were weakened and that there·had been a hemorrhage into the pons. There ·was medical testimony to the effect that that could not have resulted from a traumatic cause, and the theory of the defendant was that the deceased suffered an apoplectic stroke, and in falling from the scaffold carried the loose plank with him.

I think we should not disturb the finding of the jury that the death resulted from the fall. Had there been no medical testimony in support of the plaintiff's case, the jury were at liberty to find, despite the medical evidence for the defendant, that the deceased was killed by the fall, and not by a stroke of apoplexy occurring at the very

moment when he stepped on the unsupported end of the plank and was thus precipitated to the ground.

I think section 18 of the labor law (Laws 1897, p. 467, c. 415), applied to the work which the deceased was doing and to the scaffold upon which he was standing. We have recently considered this question in Caddy v. Interborough R. T. Co. (decided herewith) 110 N. Y. Supp. 162, and need not add to what was there said.

The appellant contends that the short plank was no part of the scaffold. It may be conceded that, if one of the workmen for his own convenience had placed the short plank on the scaffold, and the master had not had either actual or constructive notice of it, it would not be liable. To all appearances when the deceased went upon it it was a part of the scaffold, and he had a right to assume that it was safe. The proof that it fell called for an explanation from the master; and, in the absence of proof that it was a mere appliance put there by one of the workmen for his own convenience, I think the jury had the right to find that it was a part of the scaffold as originally constructed. The mere fact that a workman was seen sitting on it a half hour after the scaffold was constructed did not prove that he put it there. For aught that appears, it was within the power of the defendant to call every one of the riggers who had assisted in the construction of the scaffold, and the fact that it did not do so was a circumstance which the jury had the right to consider. Moreover, even though it had been put there by one of the scrapers, I think the jury could find that the master had adopted it as a part of the scaffold. The man who had charge of the construction of the scaffold knew it was there, and indeed is one of the witnesses who testified to seeing the plaintiff step upon the unsupported end and fall. The master owed a duty both to furnish and maintain. The obligation was a continuing duty. Berthelson v. Gabler, 111 App. Div. 142, 97 N. Y. Supp. 421; Walters v. Fuller Company, 74 App. Div. 388, 77 N. Y. Supp. 681. The master intrusted that duty to its foreman, and I think the jury could find that the short plank was a part of the scaffold, either from original construction, or because it had become so by the adoption of the master. Croce v. Buckley, 115 App. Div. 354, 100 N. Y. Supp. 898. It was not error for the court to charge that the duty was a continuing one, or to refuse to charge "that it was the duty of the defendant merely to use reasonable care to provide a reasonably safe and secure scaffolding for the men while they are doing their work." The statute imposes the duty to provide a safe, not a reasonably safe, scaffold. It may be that reasonable care in the performance of that duty, either by the master, or by the one selected by him to perform it, is all that is required; but that question is not presented by the refusal to charge as requested. The question of contributory negligence was for the jury, and no rulings on the admission of evidence called to our attention require consideration.

The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.