BRADY v. PENNSYLVANIA STEEL CO.

(Supreme Court, Appellate Division, First Department.  May 6, 1910.)

1. MASTER AND SERVANT (§ 291*)—INJURIES—INSTRUCTIONS—CONFLICTING INSTRUCTIONS.

In an action for the death of a bridge worker by stepping on the end of an unspiked tie of the track upon which a traveling derrick ran, so as to cause it to tip and let him fall, the court charged that it was the employer's duty to furnish intestate with a reasonably safe place to work, and that, while he assumed obvious risks, he did not assume latent dangers known to the employer and unknown to him, and of which he did not have warning or information, and also charged at defendant's request that, if the work of removing the rails in the course of the work was what caused the tie upon which intestate stepped to become unsafe, the rule of law requiring the employer to provide a safe place of work, did not apply. *Held*, that the latter charge was inconsistent with that as to latent defects and furnishing a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 291.*]

2. MASTER AND SERVANT (§ 107*)—SAFE PLACE—PLACE BECOMING UNSAFE DURING PROGRESS OF WORK.

The bridge on which intestate was working when killed had two decks and a traveling derrick was operated on the upper deck, being run upon rails laid on wooden ties. As the work progressed, the ties and rails were taken up from the part of the bridge which had been constructed and relaid in front of the traveler, and intestate was killed by stepping on the end of a tie, from which the spikes had been drawn and rails removed, when the tie tipped and permitted him to fall. *Held*, that the dangerous

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

condition of the tie was made in the course of the work, so that the rule relating to furnishing a safe place of work did not apply.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–212; Dec. Dig. § 107.*]

Scott, J., dissenting.

Appeal from Trial Term, New York County.

Action by Marguerite Brady, as administratrix of Martin Kriese,. also known as Martin Brady, deceased, against the Pennsylvania Steel Company. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed, and new trial ordered.

See, also, 122 N. Y. Supp. ——.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT,. CLARKE, and DOWLING, JJ.

Battle & Marshall (H. Snowden Marshall, of counsel), for appellant. Richard J. Donovan (Herbert D. Cohen, on the brief), for respondent.

CLARKE, J. This is the second time that this case has been in this court upon appeal from a judgment in favor of the plaintiff. In 134 App. Div. 372, 119 N. Y. Supp. 75, the judgment was reversed and a new trial ordered because the case had been submitted to the jury upon the theory that it was the duty of the master to furnish suitable and proper scaffolding for the use of its employés. We held that the structure upon which plaintiff was at work could not be held to be a scaffold, and reversed the judgment and ordered a new trial.

· Upon this trial the case was submitted to the jury upon the theory that the master had failed to perform his duty to furnish a safe place to the decedent in which to do his work. The defendant was engaged in the construction of the Blackwell's Island Bridge across the East River. The bridge had two decks. On the upper deck the defendant had installed a traveling derrick, called a "traveler." The girders ran north and south, and the floor beams east and west, and were bolted fast to the girders, which were permanent. Wooden ties were laid on the floor beams. Upon these were laid ordinary railroad rails spiked down; so that while the rails remained in position the ties were securely fastened. On the rails ran the trucks of the heavy traveler which was moved forward from time to time as the progress of the work required. The rails were about 45 feet long, and, as the traveler was moved towards the center of the river, as the work progressed, the rails and ties behind the traveler were taken up and relaid in front of it.

From the center of one of the ties so fastened, there had been cut a piece from three to four feet long, in order to make an opening through which a guy had been stretched to support a derrick. This opening had existed some 18 or 20 months prior to the time of the accident.. The two ends of the tie so made, each being under a rail and resting upon the floor beams, was securely fastened in position. The ends of the ties extended beyond the rails.· On the day of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

:accident the deceased was acting as a signal man, transmitting orders to the engineer in the traveler for the movement of the steam derricks. The rails and ties behind the traveler were being taken up to be replaced in front of it. The process was to take out the spikes and to :affix slings to the rail, which would then be hoisted and swung forward by the derricks. The rail had been loosened about 20 minutes at the time of the accident, and the deceased started forward to give a signal to the engineer when he stepped on the end of the half tie referred to, which projected beyond the outer rail, and his weight caused it to tilt up, and he fell to the floor below, and was killed.

The court charged the jury:

"The relation of master and servant existed between the deceased man and the defendant, and that particular relationship imposed upon the defendant the duty of exercising a proper or reasonable degree of care in order that the deceased man should be furnished a reasonably safe place in which to render the service that was required of him. That is, it was the duty of the defendant to furnish the plaintiff with a reasonably safe place in which to perform his work. Then there is another proposition of law, namely, that the employé or servant, when he enters upon work, assumes the obvious risks incident to that work. That is, if he can see that there is a certain risk incident to the prosecution of the work—that is, an obvious risk—then he is supposed by the law to assume that particular risk, and, if injury happens to him because of that risk, he cannot recover. But, on the other hand, latent or hidden dangers which are known to the employer and unknown to the servant or employé, and of which the employé has neither warning, information, nor instruction, are not assumed by the servant or employé. * * * Now it is for you, gentlemen, under the rules that I have laid down for you, to determine whether there was an obvious risk which the defendant assumed, whether he himself was guilty of any negligence on his part which contributed to the injury, and whether the defendant was guilty of negligence in not furnishing him with a reasonably safe place in which to perform the particular work which was required of him on that day."

At the close of the charge, defendant's counsel said:

"If your honor please, I except to that portion of your honor's charge in which your honor charges the jury that it was the duty of the defendant to furnish a reasonably safe place for the decedent to work. I except on the ground that in a case of this sort, where the danger is created as the work progresses, that rule has no application. I except to that portion of your honor's charge in which your honor charges the jury that latent dangers are not assumed by an employé on the ground that that rule can have no application to the facts in this case. I request your honor to charge the jury that, if the jury believe that the work of removing the rails was what caused the tie upon which Brady stepped to become unsafe, then the rule of law which makes it incumbent on an employer to provide and maintain a safe place for an employé to work in has no application. The Court: I charge that."

The facts absolutely establish that it was the work of removing the rails which caused the tie to become unsafe. There was no dispute about the facts. If this charge was correct, and it was the law of the case, then the complaint should have been dismissed. This charge was utterly inconsistent with the charge as to a latent defect and with the "safe place" charge. That the jury found a verdict for plaintiff in the face of that charge shows that they paid no attention to it, or that they were confused by the preceding part of the charge, or that they gave the verdict against the employer upon the ground of sympathy. Upon this ground alone the judgment should be reversed.

I think it is quite evident that this is one of the cases in which the

dangerous condition was made by the very work itself, and that the rule in regard to a safe place does not apply. Citrone v. O'Rourke Eng. Co., 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340. The tie which tilted was sound and firm and safe so long as the rail was spiked thereto. It had continued in the same condition for months. It was the taking up of the rail, to be followed by the removal of the ties, which rendered the tie unsafe. This was done but a few minutes before the accident, and in the necessary progress of the work itself. I do not think a cause of action was established.

The judgment and order should be reversed, and a new trial ordered, with costs to appellant to abide the event.

INGRAHAM, P. J., and McLAUGHLIN and DOWLING, JJ., concur. SCOTT, J., dissents.