(89 App. Div. 375.)

HAUGHEY v. THATCHER.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. MASTER AND SERVANT—PERSONAL INJURIES—NEGLIGENCE—SAFE PLACE TO WORK.

A workman employed by defendant to lay brickwork on a temporary arch put in by an independent contractor was injured by the falling of the arch, caused either by negligence in setting it, or in dealing with it by defendant's workmen afterward. *Held*, that defendant would not be liable in the absence of knowledge of its dangerous condition, or of proof that its fall was caused by incompetent servants or an insufficient number of servants.

2. SAME—SCAFFOLD.

A temporary arch used to support brickwork while being laid, and upon which the workmen were in the habit of stepping from the scaffold by its side, is not a "scaffold," within the labor law (Laws 1897, p. 467, c. 415, § 18), declaring that a person employing labor in the erection of a

building shall not furnish scaffolding which is unsafe, unsuitable, or improper, and not so constructed as to give protection to the person employed.

Appeal from Trial Term, Kings County.

Action by James Haughey against John Thatcher. After trial, a dismissal of the complaint was directed, and a motion for a new trial ordered to be heard at the Appellate Division in the first instance. Motion denied.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, and HIRSCHBERG, JJ.

Henry Yonge, for plaintiff.
Hugo Hirsh, for defendant.

HIRSCHBERG, J. The plaintiff was injured while engaged in the employment of the defendant in the construction of an extension to a storage warehouse in the Borough of Brooklyn. He was putting in terra cotta arches at the time of the accident, between iron girders or floor beams. The construction of the arches required the use of a temporary arch upon which to lay the bricks of terra cotta which formed the permanent arch. The temporary or false arch was made of iron ribs adjustable to the size desired, and covered with wooden latticework, and when in place it was suspended at either end by a notch cut in a hanger which fitted upon the flange of the iron girder, and was securely fastened to the girder by a screw clamp in the hanger. The temporary arches were furnished to the defendant by an independent contractor under a contract which required such contractor to set them in the building, as well as to provide them for that purpose. The contractor was apparently reputable and responsible; the form of the temporary arches had been in use many years, and during that period had been employed in the construction of many important buildings; the temporary arches were set in the building in question by experienced men; and the particular arch which fell with the plaintiff was found after the accident in a condition which enabled it to be used afterwards in the completion of the building. The accident occurred while the plaintiff was standing upon one of the temporary arches, and while he was engaged in setting terra cotta bricks upon it, in the course of which process, for some undisclosed reason, it fell with him to the floor below.

There was some evidence that this particular arch was securely set. The only evidence tending to indicate what would be likely to cause any of the arches to fall if properly set was directed to an alleged practice on the part of the defendant's workmen, when difficulty was encountered by them in making the bricks fit in the formation of the permanent arch, to knock the notched hangers of the temporary arch aside, and thereby diminish the extent of the engagement of the notch with the beam flange. A witness testified that he saw the plaintiff knocking upon the arch which fell about 20 minutes before the accident. This the plaintiff denied, but he admitted that he did not know why the arch fell, or whether it was because some other workmen had been knocking at it in the manner indicated. More than one man worked

at each arch.   A scaffolding was furnished on each side of the arch for the brick, cement, and workmen; but the men were in the habit of standing upon the temporary arch, instead of upon the scaffolding, while laying the terra cotta bricks.   The plaintiff admitted that the work could be done from the scaffolding, but said that it would be very hard to do it that way, and that it would take considerable time.

There was no evidence of structural defect in the arch which fell, and the natural inference from the evidence is, therefore, that the fall was occasioned by either some negligence in the act of setting the arch in the first place, or in dealing with it after it was set by the defendant's workmen in the process of working on the building.   In neither case would the negligence be chargeable to the defendant in the absence of knowledge, express or implied, or in the absence of proof that it resulted from incompetent servants or from an insufficient number of servants.   Under these circumstances the doctrine of res ipsa loquitur does not apply, as that rule can only be invoked, as between master and servant, if at all, where the facts not only warrant an inference of negligence, but also establish that such negligence was that of the master.   Fink v. Slade, 66 App. Div. 105, 72 N. Y. Supp. 821; Moran v. Munson Steamship Line, 82 App. Div. 489, 81 N. Y. Supp. 612, and cases cited.

The learned counsel for the plaintiff claims that the temporary arch is to be regarded as a scaffold, within the meaning of section 18 of the labor law (chapter 415, p. 467, Laws 1897), and that the negligence of the defendant is therefore to be assumed from the mere fact that it fell.   I do not think that the temporary arch can be so regarded. Its primary purpose was to support and shape the permanent arch until that arch should be set and hardened sufficiently to justify the removal of the temporary structure.   It no more became a scaffold because of the habit of men stepping on it while at work than would a wall or beam temporarily constructed to hold up some part of the structure during its creation because it might be used by the men to steady or sustain their weight for personal convenience in working. It may very well be that the defendant, if aware that the men did so use the temporary arch, would be required to make it strong enough to support their weight, in addition to whatever other weight it was designed to bear, and that he would be liable for negligence in that regard upon proof that it was inadequate by reason of negligence lawfully attributable to him; but that doctrine would not extend the case to the stringent liability of the labor law, supra.   I think that for the purposes of this case the temporary arch may be fairly regarded as neither a place nor an appliance furnished to the plaintiff to work in or with, but that during the time it was designed to remain in place to shape and support the final structure it should be regarded as a component part of the building, within the rule of Stourbridge v. Brooklyn City R. Co., 9 App. Div. 129, 132, 133, 41 N. Y. Supp. 128.   But whether it may be so regarded or not, it seems to me quite clear that it is not a scaffold or any cognate contrivance, within the ordinary meaning of the word, or within the meaning of the labor law, and that its employment as a personal support by the plaintiff was incidental, and not primary, both in actual use by him and in intention by his master.

In the absence of statutory liability, the plaintiff's claim has no foundation upon any proven act of negligence on the part of the defendant, and his exceptions should therefore be overruled, and the motion for a new trial denied.

Plaintiff's exception overruled, and motion for new trial denied, and judgment unanimously directed for the defendant, with costs. All concur.