MARGUERITE BRADY, as Administratrix of the Estate of MARTIN KRIESE, Deceased, Appellant, *v.* THE PENNSYLVANIA STEEL COMPANY, Respondent.

Negligence — master and servant — safe place to work.

The obligation of a master to exercise reasonable care to furnish his servants with a safe place in which to work does not require him to avert every peril which may arise in the erection of a bridge which necessarily involves many dangers to the workmen however carefully the work is prosecuted, but where it is necessary for employees engaged in such work to walk along the ends of ties projecting over the sides of the floor beams, the fact that by the cutting of one of the ties a condition has been created, rendering it exceedingly dangerous as a stepping place, while all the others are perfectly safe, imposes upon the master the obligation to warn a servant unfamiliar with the conditions and called upon to work there on short notice, that he cannot step upon the end of that particular tie without danger. In the absence of any warning to this effect the master should be regarded as having failed in his duty to exercise reasonable care to furnish a safe place to work.

*Brady* v. *Pennsylvania Steel Co.*, 155 App. Div. 933, reversed.

(Argued April 30, 1915; decided July 13, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 2, 1913, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Richard J. Donovan* and *Herbert D. Cohen* for appellant. The case should have been submitted to the jury upon the theory that the master had failed to supply the plaintiff a safe place to work. (*Connelly* v. *H. & G. Const. Co.*, 192 N. Y. 182; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Palmijiano* v. *Hyde-McFarlin Co.*, 126 App. Div. 221; 194 N. Y. 524; *Glennon* v. *Star Co.*, 130 App. Div. 491; 197 N. Y. 597; *McGovern* v. *C. V. Ry. Co.*, 123 N. Y. 281; *Finn* v. *Cassidy*, 165 N. Y. 584; *Mane* v. *Erie R. R. Co.*, 198 N. Y. 221; *Knickerbocker* v. *G. R. Signal Co.*, 209 N. Y. 404.)

*Addison A. Van Tine* and *H. Snowden Marshall* for respondent. The danger was created by the work and the rule in regard to a safe place does not apply. (*Citrone* v. *O'Rourke E. C. Co.*, 188 N. Y. 339; *Bertolami* v. *U. E., etc., Co.*, 120 App. Div. 192; *Fallon* v. *Metz*, 110 App. Div. 755; *Mullin* v. *Genesee Co. El. L., P. & Gas Co.*, 202 N. Y. 275; *Russell* v. *Lehigh Valley Railroad Co.*, 188 N. Y. 344; *Perry* v. *Rogers*, 157 N. Y. 251; *McDonough* v. *Clombrock Steam Boiler Co.*, 113 App. Div. 432; *O'Connell* v. *Clark*, 22 App. Div. 466; *Toohey* v. *Ocean S. S. Co.*, 78 App. Div. 178.)

WILLARD BARTLETT, Ch. J. In January, 1908, the defendant corporation was engaged in constructing the Blackwell's Island bridge across the East river. The bridge, so far as then built, consisted of two decks, the lower deck being intended for trolley cars, teams, pedestrians, and the upper deck for an elevated railroad. On the upper deck the defendant was operating a traveling derrick. This deck consisted of lateral floor beams across which were laid heavy wooden ties which were so long that their ends projected over the sides of the floor beams. Upon these ties had been spiked rails which it was desired to remove by means of the traveling derrick which has been mentioned. The rails behind the derrick were taken

up and relaid in front of it. The plaintiff's intestate, Martin Brady, was an ironworker in the employ of the defendant; but upon the day of the accident he was directed by the defendant's foreman to leave his usual work and act as a signalman to direct the engineer on the traveling derrick when to raise and lower the rails which were being moved. In order to see what was going on and to communicate the necessary information to the engineer, Brady was obliged to walk along the ends of the ties which have been mentioned as projecting over the sides of the floor beams. On account of the length and weight of these ties it was perfectly safe to do this inasmuch as the weight of a man would not suffice to tip up the ties even after the iron rails had been removed therefrom. This was true of all the ties with a single exception and that exception proved fatal to Brady. It seems that several months before the accident one of the ties had been sawed in two in the middle for the purpose of allowing a guy rope to pass through from the upper deck to the lower. This long tie, therefore, from which a section had been cut out in the middle became two short ties; and each of these short ties was so light as to be insufficient to support the weight of a man placed upon the outer and projecting end after the iron rails had been taken away. Brady had no notice of that danger. He was walking along the ends of the ties to give a signal to the engineer when he stepped upon this tie· which had thus been shortened. It gave way with him and he fell to the lower deck and was killed.

This case has been reviewed by the Appellate Division three times. Upon the first review a judgment in favor of the plaintiff was reversed because of the refusal of the trial judge to instruct the jury that the structure from which the plaintiff's intestate fell was not a scaffold within the contemplation of the Labor Law. (*Brady* v. *Penn. Steel Co.*, 134 App. Div. 372.) On the second review a second judgment in favor of the plaintiff was reversed

on the ground that the case was one in which the danger-
ous condition was created by the very work itself in
which the plaintiff's intestate was engaged and the rule
in regard to a safe place did not apply. (*Brady* v. *Penn.
Steel Co.*, 138 App. Div. 233.) Upon the third trial,
which now comes here for review, the court following
the law of the case as laid down by the Appellate Divi-
sion on the second appeal, dismissed the complaint after
the plaintiff had put in her evidence and the defendant
rested without offering any proof. The Appellate Divi-
sion (one of the justices dissenting) has affirmed the judg-
ment upon this dismissal on the opinion of that court on
the second appeal.

I am of the opinion that the learned Appellate Division
fell into error in thinking that this case was controlled by
the principle applied in *Citrone* v. *O'Rourke Eng. Const.
Co.* (188 N. Y. 339). There it was held that the duty of
the master to furnish his servants with a reasonably safe
place to work in has no application when the danger to
which the servants are exposed is due to the manner in
which the work is prosecuted. The work to be done was
the construction of a trench, and its very construction
made the place where the plaintiff had to work and
created the danger to which he was exposed. That
danger was unavoidable and appertained to the very
work which the servant was doing. In the present case
the conditions were very different. The plaintiff's intes-
tate was occupied in giving signals to the engineer of the
traveling derrick in respect to the removal of the rails.
Such removal created no danger whatever along the path
over the projecting ends of the ties upon which Brady was
expected and required to move except in the single case
of the one tie which had been cut in two. The shorten-
ing of that tie made it a little less than a death trap to a
person circumstanced as Brady was without any warning
of the danger. The condition which resulted in his death
was created, not by anything which he was engaged in

doing but by the previous shortening of the tie, so that the removal of the rails made the end insecure to step upon while leaving the ends of all the other ties perfectly safe as a pathway for the men at work there. The obligation of the master to exercise reasonable care to furnish his servants with a safe place in which to work does not require him to avert every peril which may arise in the erection of a structure like this bridge which necessarily involves many dangers to the workmen however carefully the work is prosecuted. The master was not prohibited from cutting this tie in two in order to make the necessary opening for the guy rope because the shortening of the tie would render it dangerous to step upon after the removal of the rails; but the fact that such a condition had been created, rendering one particular tie exceedingly dangerous as a stepping place while all the others were perfectly safe, did impose upon the master the obligation to warn a servant unfamiliar with the conditions and called upon to work there on short notice, that he could not step upon the end of that particular tie without imperiling his life. ' In the absence of any warning to this effect a master should be regarded as having failed in his duty to exercise reasonable care to furnish a safe place, for the warning would have made the place safe which without it proved deadly. The complaint specifies the failure to give any warning of this dangerous condition as one of the elements of negligence with which the defendant is chargeable.

I think the facts proved by the plaintiff entitled her to have the question of the defendant's negligence submitted to the jury and, therefore, that the judgment should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, COLLIN, HOGAN, CARDOZO and SEABURY, JJ., concur; CUDDEBACK, J., dissents.

Judgment reversed, etc.