"As the plaintiff made two contradictory statements as to the date when the employment was to commence, there was no more reason for accepting the version adverse to the plaintiff than there was for adopting the version favorable to the plaintiff. Moreover, the rule, which requires that upon a motion to dismiss the complaint the plaintiff is entitled to have the court adopt the view most favorable to the plaintiff, should have led to a denial of the motion to dismiss the complaint. Any ambiguity which existed in the plaintiff's testimony should have been left to the jury for their determination."

This case comes within the principle laid down in the Epstein Case, and the dismissal of the complaint was error.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.

---

(95 Misc. Rep. 125) .

### ADELSTEIN v. ROEBLING CONST. CO.

(Supreme Court, Appellate Term, First Department. May 22, 1916.)

1. MASTER AND SERVANT ☞116(1)—MACHINERY AND APPLIANCES—"SCAFFOLD."

The principal function of a "scaffold," within Labor Law (Consol. Laws, c. 31) § 18, in the erection or alteration of a building, is to support in a convenient position the workmen engaged in the work, either while working or while passing to and fro.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. ☞116(1).

For other definitions, see Words and Phrases, First and Second Series, Scaffold.]

2. MASTER AND SERVANT ☞116(1)—MACHINERY AND APPLIANCES—SCAFFOLD.

A wooden form for use in laying a concrete floor, but not for workmen to stand on or walk upon, is not a scaffold, within Labor Law, § 18, forbidding unsafe, unsuitable, or improper scaffolds or other mechanical contrivances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. ☞116(1).]

3. APPEAL AND ERROR ☞1066—HARMLESS ERROR—INSTRUCTIONS.

An employé was injured by stepping on a wooden form used for laying a concrete floor, but not intended for workmen to stand or walk upon. Held, that an instruction permitting the jury to consider the case as though the form were a scaffold, and as such within section 18 of the Labor Law, forbidding unsafe scaffolds, was prejudicial error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. ☞1066.]

Cohalan, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by Thomas Adelstein against the Roebling Construction Company. From a judgment for plaintiff, entered on the verdict of a jury, defendant appeals. Reversed, and new trial ordered.

Argued May term, 1916, before GUY, BIJUR, and COHALAN, JJ.

William F. McCombs, of New York City (Alexander Gordon, of New York City, of counsel), for appellant.

Aaron A. Feinberg, of New York City (L. F. Fish, of New York City, of counsel), for respondent.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BIJUR, J.  Plaintiff has recovered damages for personal injuries. At the time of the accident plaintiff was an iron worker employed, by the Prince Iron Works, engaged in some construction work on a building in East Seventy-Fifth street.  Defendant was engaged in the installation of concrete floors in the same building.  Its men were installing such floors on the seventh floor.  The method of construction is approximately as follows:

Iron girders bearing the floor were placed some 6½ feet apart.  They were about 14 feet long.  They thus formed the side of an open panel 14x6½ feet.  The flanges of these beams are about 10 inches wide; the beam itself about a foot in depth.  The concrete floor to fill this panel is laid or poured upon a "form."  In order to construct this "form," a board is hung by wires running around the beam, and brought flat to the lower flange of the beam.  A small upright is then nailed on the inner (namely, the panel) side of this board.  Another board is then nailed to the top of this small upright standing one. Then cross joists, 2x4, are nailed by a single heavy nail to the bottom of the last-named board.  The joists extend across the panel.  This construction is merely temporary, to hold the joists in place.  An iron strap is then passed under either end of these joists and clamped over the top flange of the iron beams.  By this means the joists are held firmly in place.  Planks are then laid on top of the joists and nailed into place, forming a sort of flooring at a point where, in the completed building, the ceiling would be.  The concrete is then laid upon this plank flooring, and made level with the upper flange, and allowed to dry.

Plaintiff, who had worked on this building for some time, was familiar with this mode of construction, and had been warned by his foreman not to step upon these "forms."  He was bringing a plank up from a lower floor to pass to his foreman on the eighth floor.  He left the stairway on the seventh floor, and walked to the second panel on the flange of the iron beams, and when he had reached a point several feet along the flange of the beam that formed the side of this panel he found the flange to be obstructed by a pile of boards laid on it.  He told apparently contradictory stories as to the condition of the "form" on this panel; i. e., that it consisted of only the 2x4 joists standing up on edge, and that these joists had already been covered by the planks.  He testified that at this point he called to some one in charge of defendant's workmen to take away the planks, but that this foreman or superintendent then told him to move along, or something to that effect, and added that he should or might step upon the "form." He started to pass the plank up to his foreman on the next floor (the eighth floor being at that time entirely open in that vicinity), and to do so stepped upon the "form," which thereupon gave way in whole or in part, precipitating him to the floor of the completed sixth floor. There is no contradiction of the fact that the 2x4 joists of this "form" were at that time not held by the iron straps around the girders, but were merely nailed to the planks which I have described; and it is also conceded that in that condition the joists will bear no serious or substantial weight.

The learned judge below, over the exception and objection of the defendant, charged the jury that there was a statute, namely, section 18 of the Labor Law, which forbade the defendant to erect a scaffold or other mechanical contrivance which was unsafe, unsuitable, or improper, and added that that was the standard set by the Legislature, altering the old common-law standard, which he explained. He then said:

"The first question is: Was section 18, which I have just read to you, performed or violated by the Roebling Construction Company? Did the Roebling Construction Company furnish in this building a scaffold or mechanical contrivance which was unsafe or improper?  *  *  *  In the second place, did the Roebling Construction Company owe a duty to plaintiff respecting this scaffold, panel, or arch?  *  *  *  And, in the third place, was the plaintiff guilty of contributory negligence?"

It may be said incidentally that defendant apparently concedes that, if this was a scaffolding, the mere fact that it was used by one not an employé of the defendant would not discharge the latter from liability. Huston v. Dobson, 138 App. Div. 810, 123 N. Y. Supp. 892; Quigley v. Thatcher, 207 N. Y. 66, 100 N. E. 596.

[1] The first point, therefore, to be determined on this appeal, is whether the construction and circumstances revealed by this record warrant the application of section 18 of the Labor Law. I have no doubt that they do not. The Court of Appeals has pointed out in Caddy v. Int. R. T. Co., 195 N. Y. 415, at pages 421–424, 88 N. E. 747, 30 L. R. A. (N. S.) 30, the great difficulty of attempting to define a scaffold; but, however great may be the difficulty of formulating an adequate definition, it will, I think, be universally conceded that the principal, if not the exclusive, function of a scaffold, used in connection with the erection or alteration of a building or "structure," is to support in a convenient position the workmen engaged in the construction, either while they are working in a fixed position, or possibly even while they are passing to and fro in the course of the work.

[2] The "form" which gave way below the plaintiff's weight in the case at bar was not intended, designed, or constructed for the purpose of supporting a workman in any event or on any occasion. It was used and intended to be used exclusively as the framework to contain and hold, while hardening, a section of concrete which, when "set," became part of a floor. Even if the defendant, or one of its representatives having adequate authority, either permitted or authorized persons occasionally to step upon or pass over this "form," while it might under appropriate circumstances be held for negligence in that regard, that would not change the character of the construction into a scaffold. This analysis of its function and its utter lack of likeness to what we commonly understand to be a scaffold is emphasized by the fact that, as testified to by the plaintiff, the top of the joists, even if covered with planks upon which the plaintiff stepped, was some 10 to 12 inches below the level of the flange on which he was walking, and which would form the final level of the completed floor. In other words, if the floor of a building constructed as the one in the case at bar were completely equipped with these forms, it would consist of a series of rectangular depressions 14 by 6½ feet in length and width, respec-

tively, and 10 inches to a foot in depth. These depressed spaces, it seems to me, may far more accurately be denominated "pits," than scaffolds.

Plaintiff's counsel appreciates the great discrepancy between the scaffold designated by the law and the construction involved in the case at bar, and realizes the significance of Haughey v. Thatcher, 89 App. Div. 375, 85 N. Y. Supp. 935, in which a somewhat similar erection, spoken of as a "temporary or false arch," was held by a unanimous court not to be a scaffold. He concedes that this case has never been overruled or adversely criticized, but endeavors to avoid its effect by claiming that it must "yield to later authority," whereby he means, for example, as was said by the Court of Appeals in Bohnhoff v. Fischer, 210 N. Y. 172, 104 N. E. 130, that "the said statute is to be liberally construed to accomplish its beneficent purpose." But, however great our sympathy with an injured workman, and however great our desire to construe a statute "liberally," the law cannot by any device be made to cover an occurrence and set of circumstances or a structure which by its terms is manifestly excluded from its operation.

He cites, also, Nixon v. Thompson-Starrett Co., 131 App. Div. 152, 115 N. Y. Supp. 130, in which planks laid over iron floor beams to enable men to carry material over them were held to constitute a scaffold; but the very statement of the case indicates strikingly the difference between it and the one at bar. Of another case, Brady v. Penn. Steel Co., 134 App. Div. 372, 119 N. Y. Supp. 75, in which certain ties used in the construction of the deck of a bridge were held not to constitute a scaffold, he says that the decision was reversed by the Court of Appeals in 215 N. Y. 456, 109 N. E. 552. A reference to the latter case, however, shows that the decision of the Appellate Division, which was reversed, is an affirmance without an opinion, reported in 155 App. Div. 933, 140 N. Y. Supp. 1111, on the authority of a previous opinion in the same action upon an appeal from a second trial, which also resulted in reversal, reported in 138 App. Div. 233, 122 N. Y. Supp. 907. The opinion on the final reversal in the Court of Appeals shows that the question of scaffolding was not involved at all; both sides having apparently acquiesced, after the first decision in the Appellate Division, in its interpretation that the ties did not constitute a scaffold.

[3] The error in permitting the jury to consider the case as though a scaffold were involved is, of course, serious, for, as the learned judge below correctly remarked, the statute has changed the old common-law rule by imposing upon the master the absolute duty of actual safety. See Holloway v. McWilliams, 97 App. Div. 360, 89 N. Y. Supp. 1074, citing Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662, and referring to the former rule as enunciated in Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017. It is quite evident that, if the element of scaffolding is removed from the case, the questions to be considered by the jury will be altogether different, and must be regarded from an altogether different standpoint. If this was a scaffold the safety whereof was substantially insured by the master by its very

construction, there was little left for the jury to determine; for, unless it was manifestly incomplete to the point of apparent danger, there would be difficulty in predicating contributory negligence on the part of the plaintiff upon such a state of facts, even without the assurance which he claims to have received of its safety. On the other hand, if it was not a scaffold, although the defendant might be held liable for some forms of negligence in relation thereto, it is at least a grave question whether any foreman or superintendent had authority to bind the defendant to an express or implied assurance of its safety, when used for a purpose altogether foreign to that for which it had been designed and installed.

Upon these subjects we neither express nor intend to indicate any opinion, but refer to them only for the purpose of emphasizing the importance of the theory upon which the case was tried and the different emphasis to be laid upon the facts according to the one or the other theory adopted. There were also many other issues of fact litigated, to which we have not thought it necessary to advert.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GUY, J., concurs. COHALAN, J., dissents.