277 F.2d 726
 Gust BOUNOUGIAS, Plaintiff-Appellee,
v.
REPUBLIC STEEL CORPORATION, a foreign corporation, Defendant-Appellant.
REPUBLIC STEEL CORPORATION, a corporation, Third Party Plaintiff-Appellee,
v.
Alavina O'MALLEY, d/b/a B. Pedersen & Company, Third Party Defendant-Appellant.
 No. 12772.
 No. 12773.
 United States Court of Appeals Seventh Circuit.
 April 21, 1960.
 Rehearing Denied May 23, 1960.
 
 1
 John G. Phillips, Oswell G. Treadway, Norman Peters, Joseph H. Hinshaw, John M. Moelmann, Chicago, Ill., for Bounougias & O'Malley.
 
 
 2
 Max E. Wildman, Thomas D. Allen, Frederick W. Temple, Chicago, Ill., for Republic Steel Corp.
 
 
 3
 Before HASTINGS, Chief Judge, CASTLE, Circuit Judge, and PLATT, District Judge.
 
 
 4
 PLATT, District Judge.
 
 
 5
 Plaintiff, Gust Bounougias, brought this action against the Republic Steel Corporation, hereafter referred to as Republic. Republic in turn filed a third-party action seeking indemnity from Alavina O'Malley, doing business as B. Pedersen & Company, hereafter referred to as O'Malley, for any judgment obtained against it by the plaintiff. The entire cause was tried to a jury and plaintiff obtained a verdict and judgment of $105,000 against Republic. The trial court instructed the jury that in the event of a verdict for plaintiff, a like amount should be returned in favor of Republic and against O'Malley. The jury followed this instruction and returned a verdict in favor of Republic and judgment was entered against O'Malley for Republic in the amount of $105,000. Motions for judgment notwithstanding the verdict in accordance with prior motions were overruled. Republic and O'Malley have appealed from this ruling.
 
 Republic contends:
 
 6
 1. The evidence failed to show a violation of the Act by Republic for the reason that the Structural Work Act, or Scaffold Act, does not apply to the crane from which the plaintiff fell, because
 
 
 7
 (a) The crane was a permanent part of Republic's plant; and
 
 
 8
 (b) It was not a mechanical contrivance erected or constructed for use in the repairing or painting of any building.
 
 
 9
 2. That if there was a violation it was not the proximate cause of plaintiff's injuries.
 
 
 10
 O'Malley stands on the same contentions as Republic to defeat plaintiff's recovery, and in addition contends:
 
 
 11
 1. That O'Malley, by virtue of the purchase order agreement, did not undertake to indemnify Republic for having wrongfully violated the provisions of the Scaffold Act;
 
 
 12
 2. Republic is barred from recovery from O'Malley by virtue of the provisions of the Workmen's Compensation Act [Ill.Rev.Stat.1959, c. 48, § 138.1 et seq.];
 
 
 13
 3. Republic is not entitled to recover from O'Malley on the basis of common law indemnity; and
 
 
 14
 4. That the trial court erred in directing a verdict in favor of Republic and against O'Malley in the event the jury found for the plaintiff.
 
 
 15
 To determine the issues in this case it is necessary to examine the facts as disclosed by the evidence. O'Malley was a painting contractor and plaintiff was employed by her as a painter. Republic entered into a contract with O'Malley to paint the structural steel and windows in its Chicago plant.
 
 
 16
 On the morning of March 4, 1956, plaintiff with other painters and his foreman, Chris Zannis, went to the Republic plant. Zannis had procured the use of the crane for painting the upper structure from one of Republic's superintendents. An electrician employed by Republic had placed the crane in the initial position, and switched off the power on the crane. The crane moved the full length of this bay of the building on steel rails fastened to the girders or roof trusses. It consisted of a trolley on which was mounted a drum about 38 inches in diameter, and a control cab which hung down from the trolley on one side. The top of the drum was more than forty (40) feet from the floor. A cable was attached to the drum and when fastened to various products raised and lowered them when the drum revolved. The crane was used principally to move products about the Republic plant. It had also been used when necessary in the maintenance of the upper portion of the plant such as placing light fixtures, changing light bulbs, and painting. Zannis had used cranes in other plants and had moved this crane several times on the day plaintiff was injured. After lunch the plaintiff and two other painters were on the trolley painting. Zannis was in the cab when someone called him to move the crane. He had the power on for the crane and the hoist, and hung out of the cab window to determine whether it was one of his men who called. He leaned out so far he almost fell, grabbed for support, and caught hold of the lever which started the drum to revolve. Plaintiff, who was standing on the drum, was thrown to the floor, and received the serious injuries for which he recovered the judgment.
 
 
 17
 Upon these essential facts Republic and O'Malley first contend that the Act is not applicable for the reason that the crane was a permanent part of Republic's plant and was not a temporary structure erected and constructed for use in painting the building.
 
 The Act reads in part:
 
 18
 "Structural Work"
 
 
 19
 "An Act providing for the protection and safety of persons in and about the construction, repairing, * * * and to provide for the enforcement thereof. [Ill.Rev.Stat., 1959, Ch. 48, § 60.]
 
 
 20
 "60. Scaffolds, cranes, ladders, etc. — Erection and construction.] * * * That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, * * * or painting * * * building, * * * shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same * * *.
 
 
 21
 "Scaffold, or staging, swung or suspended from an overhead support more than twenty (20) feet from the ground or floor shall have, where practicable, a safety rail properly bolted, secured and braced, rising a [at] least thirty-four (34) inches above the floor. * * *"
 
 
 22
 "69.
 
 
 23
 * * * * * *
 
 
 24
 "For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; * * *"
 
 
 25
 The title of the Act clearly indicates that the legislature intended it for the protection and safety of workmen in erecting and repairing of buildings. The courts in Illinois have construed the Act liberally to accomplish that end. In Schultz v. Henry Ericsson Co., 1914, 264 Ill. 156, 106 N.E. 236, 239, the court held the Act constitutional and that it was for the jury to determine whether the scaffold was safe, suitable and proper. At page 164 of 264 Ill., at page 239 of 106 N.E. the court said:
 
 
 26
 "The object to be attained by this statute was to prevent injuries to persons employed in this dangerous and extra-hazardous occupation, so that negligence on their part in the manner of doing their work might not prove fatal. * * * No attempt is made to define what shall be considered or shall constitute a safe, suitable, and proper scaffold, which, from the very nature of things, could not well be done, for what might be a safe, suitable, and proper scaffold for one kind of work under one set of conditions or circumstances would be wholly inadequate, insufficient and unsafe for doing another kind of work under other conditions or circumstances and at a different height from the ground. Consequently the Legislature has not attempted to define what shall constitute a safe, suitable, and proper scaffold, but has cast the burden of constructing safe, suitable, and proper scaffolds upon the employer, and he cannot escape liability for injuries sustained by reason of his failing to furnish such scaffolds by pleading ignorance of their dangerous condition when the conditions are known to him."
 
 
 27
 and in 264 Ill. at page 166, 106 N.E. at page 240 the court said:
 
 
 28
 "`[W]illfully' is synonymous with `knowingly,' and to constitute a willful violation of the statute it is not necessary that there should have been `a reckless disregard' of its provisions. The employer is liable not only when the dangerous conditions are known to him, but also when by the exercise of reasonable care the existence of such dangerous conditions could have been discovered and become known to him." In Claffy v. Chicago Dock & Canal Co., 1911, 249 Ill. 210, 94 N.E. 551, affirmed Chicago Dock & Canal Co. v. Fraley, 228 U.S. 680, 33 S.Ct. 715, 57 L.Ed. 1022, the court again gave a liberal construction to the Act although it was argued that it was a penal statute. In construing §§ 61 and 62, which make no mention of buildings being repaired, the court stated in 249 Ill. at page 220, 94 N.E. at page 554:
 
 
 29
 "[T]he obvious purpose of the act, as we have said, is to provide protection for workmen against injuries while engaged in constructing, repairing, altering, or removing buildings, and it is doing no violence to the rules of construction to hold that the act imposes the same obligation of protection against injuries from the same dangers in altering, repairing, or removing a building that is required in case of the construction of a building."
 
 
 30
 In Fetterman v. Production Steel Co. of Illinois, 1954, 4 Ill.App.2d 403, at page 410, 124 N.E.2d 637, the court held the contractor of the brick work liable to the plaintiff who was employed by the general contractor as a steelworker when he fell from a scaffold erected by the brick contractor. The court also held the object of the Act eliminated the defenses of contributory negligence and assumed risk. In Kennerly v. Shell Oil Co., 1958, 13 Ill.2d 431, 433, at page 436, 150 N.E. 2d 134, 138, the court held the word "or" in the Act to be "and", and imposed liability on the owner, contractor, subcontractor, foreman, and other person, and said:
 
 
 31
 "[The Act] deals with work that the General Assembly has regarded as particularly hazardous, and its purpose is to reduce the hazard to the fullest possible extent. To that end it has imposed a duty upon both the contractor and the owner."
 
 
 32
 Thus the Structural Work Act has been liberally construed to carry out the purpose of the Act as intended by the legislature.
 
 
 33
 With these principles of construction of the Act in mind we must determine whether the Scaffold Act is applicable to the facts and circumstances in this case. The crane was erected primarily to move products in Republic's plant. Since the crane was used as a scaffold when necessary in the maintenance of the upper structure of the plant it is a reasonable inference that the secondary purpose of its erection was for this use. The crane was not a permanent part of the building like the structural steel supports and roof trusses. It could be moved to reach various upper portions of the building and could be removed without damage to the building. It is argued by Republic and O'Malley that, if the crane in this case falls within the Scaffold Act, the Act would also include a window sill or a porch roof. While we are not presented with such facts neither the window sill nor the porch roof could be moved as a scaffold, and they certainly could not be removed without damage to the structure itself. In support of their position they rely upon March v. Hirshman, 1956, 11 Ill.App.2d 245, 137 N.E.2d 279, an abstract opinion. An examination of the opinion discloses that the "defendant ordered the plaintiff to defendant's home to `unclog the drain on top of the front sun porch and install a leaf catcher.' In the course of descending from the roof of the house, plaintiff fell and was injured." The court denied recovery in a negligence action because plaintiff failed to prove that he was in the exercise of ordinary care. The court, without explanation, held that the Scaffold Act was not applicable and did not eliminate "elements of due care." The crane in the instant case, as we have explained, is not comparable to the roof of a porch which is a permanent part of the house.
 
 
 34
 Donohue v. George W. Stiles Construction Co., 1919, 214 Ill.App. 82, cited by O'Malley and Republic is clearly not in point. In that case a wrench was dropped by a workman from a steel beam which was in place in a post office building and was being riveted. The wrench fell and struck a mail clerk who was not a construction worker. The court permitted recovery on the theory of common law negligence but held that the Act did not apply so "as to give protection to persons passing under or by the same." The court evidently referred to the intention of the Act to protect only workmen engaged in the structural work. Moreover, the wrench was dropped by the workman from a beam which was a part of the work and not from a scaffold.
 
 
 35
 The defendants, Republic and O'Malley, insist that the Illinois Act was patterned after the New York Act and consequently the decisions in courts of that state are persuasive here. The New York Act, Labor Law 1909, § 18, is similar in its language and its purpose to protect workmen in extra-hazardous employment. It uses the words "shall not furnish or erect or cause to be erected for the performance of such labor * * * scaffolding, etc. which are unsafe * * *." In Schultz v. Henry Ericsson Co., supra, the court in 264 Ill. at page 162, 106 N.E. at page 239 said:
 
 
 36
 "Neither do we think the statement of claim filed was insufficient to reasonably inform [defendant-contractor] of the nature of the case [it] was called upon to defend when it charged that [plaintiff-employee] was injured by reason of the failure to furnish him a proper, safe, and sufficient scaffold upon which to work. The charge is almost in the language of the statute, * * *.
 
 
 37
 "Whether or not [plaintiff-employee] established a case of common law negligence against [defendant-contractor] is wholly immaterial, inasmuch as we are of the opinion that [plaintiff-employee] made a prima facie case, under the statute, for a failure to furnish and maintain a safe, suitable, and proper scaffold upon which he should work."
 
 
 38
 It is evident that the Illinois court in its liberal construction of the Act has considered "erected and constructed" as similar to "furnish or erect." O'Malley and Republic have cited the following New York cases to establish that the Scaffold Act is not applicable to the crane in the instant case. Broderick v. Cauldwell-Wingate Co., 301 N.Y. 182, 93 N.E. 2d 629; Haughey v. Thatcher, 89 App. Div. 375, 85 N.Y.S. 935; Ericson v. Bradley Contracting Co., Sup., 150 N.Y. S. 169; Adelstein v. Roebling Construction Co., 95 Misc. 125, 159 N.Y.S. 36; Brady v. Pennsylvania Steel Co., 119 N. Y.S. 75; Wright v. Smith, 152 App.Div. 476, 137 N.Y.S. 264. Plainly the New York court held in each of these cases that the place or structure from which the workman fell was not furnished nor intended to be used as a scaffold, but was a part of the construction work itself. In the instant case the crane was furnished and was intended to be used as a scaffold, and was not a part of the work.
 
 
 39
 In Croce v. Buckley, 115 App.Div. 354, 100 N.Y.S. 898, the New York court was confronted with a situation more similar to the facts in the instant case. Plaintiff was standing on top of an elevator cutting a hole in the wall when the elevator suddenly moved and plaintiff was injured. The elevator was used principally to carry passengers and furniture, but the court held that it was furnished and intended to be used as a scaffold within the New York Act.
 
 
 40
 Republic's crane falls within the purview of the Act. We have been unable to find and counsel has failed to cite any Illinois case in which the facts are similar to the instant case. The crane had been literally "erected or constructed" and used for the repairing and painting of Republic's building. It was positioned temporarily just as any scaffold would be constructed or positioned temporarily to accomplish its purpose. The Act when liberally construed uses the words "erected and constructed" in the sense of being furnished. It was furnished and intended to be used, at the time plaintiff was injured, as a scaffold. The aim of the statute is to provide workmen with a safe place to work. To construe the Act as not applicable would be in complete opposition to the Illinois court's liberal construction of the Act to protect workmen in an extra hazardous occupation.
 
 
 41
 There is no merit to the contention that there was no proof that the defendant's violation of the Act was the proximate cause of plaintiff's injuries. The contention is answered in Kennerly v. Shell Oil Co., supra, 13 Ill.2d at pages 435 and 436, 150 N.E.2d at page 137:
 
 
 42
 "The Scaffold Act deals with highly dangerous activities. It has been regarded from the outset as intended to fix an independent, nondelegable duty of compliance upon the owner of the property and upon each contractor and subcontractor engaged in the work."
 
 
 43
 The injury was caused by Republic's "wilful violation" of the Act and Republic cannot escape liability regardless of the fault of O'Malley. Kennerly v. Shell Oil Co., supra. Cf. Schmid v. United States, 7 Cir., 1959, 273 F.2d 172.
 
 
 44
 Since the judgment against Republic must stand we must determine whether O'Malley is bound to indemnify Republic by virtue of the purchase order agreement. This agreement read in part as follows:
 
 
 45
 "Rules Governing Contracts and Their Employees"
 
 
 46
 "A — General
 
 
 47
 "All work * * * shall conform to the requirements of the law of the State. * * *"
 
 
 48
 "B — Insurance Coverage
 
 
 49
 "All outside contractors * * * shall be required to furnish evidence of proper insurance coverage * * * as required under paragraphs 13 and 14 of the purchase agreement as follows:
 
 
 50
 "13. The Seller [O'Malley] expressly assumes and agrees to indemnify the Buyer [Republic] against all liability of every kind for injury to persons, including wrongful death, or damage to property, occurring during and in consequence of the carrying on by the Seller of the work contemplated in this contract, where such injury or damage is due to the negligence of the Seller, his employees, subcontractors or agents. In the event Seller in the performance of the work called for by this contract, such machinery and/or equipment shall be considered as being under sole custody and control of the Seller during the period of such use by Seller, and should any person or persons in the employ of Buyer be used to operate said machinery and/or equipment during the period of such use, such person or persons shall be deemed during such period of operation to be an employee or employees of Seller."
 
 
 51
 "14. * * * shall procure at his own cost and keep in force, * * * insurance. * * *"
 
 
 52
 "C — Safety Rules Governing Contractors and Their Employees.
 
 
 53
 "The following `Safety Rules Governing Contractors and their Employees' are general plant rules with which your personnel should be thoroughly acquainted. * * * Enforcement of these rules by his employees shall be completely contractor's responsibility."
 
 
 54
 Then follow the safety rules applicable to Republic's machinery, equipment and plant.
 
 
 55
 The plaintiff was injured while employed by O'Malley in the performance of the work provided for by the contract and over which she had exclusive control. O'Malley was permitted to use the crane. Republic's electrician positioned the crane and switched the power off. Zannis, O'Malley's foreman, was told not to move the crane. He had operated other cranes but had no experience in operating this crane. Zannis had switched on the power to move the crane and when he grabbed the lever the drum revolved and the plaintiff fell.
 
 
 56
 The question is whether the contract was sufficient under the circumstances to entitle Republic to indemnity. The contract was to be performed in Illinois, and must be construed in accordance with the Illinois law. In Griffith & Sons v. Fireproofing Co., 1923, 310 Ill. 331, 141 N.E. 739, 38 A.L.R. 559 the subcontractor entered into a contract that it would hold harmless the contractor and owner from loss from accidents happening to any person occasioned directly or indirectly by the operations of the subcontractor. A workman was injured during the performance of the subcontractor's work by the fall of a tile from a scaffold constructed by the subcontractor. He obtained a judgment against the contractor and the owner because of the violation of the Scaffold Act. The contractor paid the judgment and recovery was permitted on the indemnity contract. At page 338 of 310 Ill. at page 742 of 141 N.E. the court said:
 
 
 57
 "Where the relation of two persons to the performance of work is such that both may be liable to a third person for an injury resulting from the work, there is no public policy which prohibits either from indemnifying the other against loss arising from positive acts of negligence by the indemnitor. Where one of them is only passively negligent but is exposed to liability through the positive acts and actual negligence of the other, the parties are not in equal fault as to each other though both are equally liable to the injured person."
 
 
 58
 In Westinghouse Co. v. La Salle Monroe Building Corp., 1947, 395 Ill. 429, 70 N.E.2d 604, 606, the court held that the Idemnitee could not recover the compensation paid its employee where the injury to the employee was caused by its negligence in the performance of its contract. The indemnity agreement provided:
 
 
 59
 "hold * * * wholly harmless from any damages * * * arising out of any acts or omissions by the [Indemnitor.]"
 
 
 60
 At page 434 of 395 Ill., at page 607 of 70 N.E.2d the court said:
 
 
 61
 "[Indemnitee] insists that [Indemnitor] breached its covenant to provide insurance for [Indemnitee's] protection, therefore as a matter of law, [Indemnitee] cannot impose upon [Indemnitor] a loss, which, but for such breach, would have been borne by an insurance carrier.
 
 
 62
 "To adopt this construction of the contract would impose on the contractor the duty to indemnify against injuries entirely without his control, and such should not be adopted in the absence of clear language in the contract including injuries arising from the negligence of [Indemnitee's] own servants."
 
 
 63
 In George Sollitt Const. Co. v. Gateway Erectors, Inc., 7 Cir., 1958, 260 F.2d 165, this court followed Westinghouse, and held that the Indemnitee could not recover. The language of the contract read: "* * * save * * * harmless * * * against any loss * * * arising from * * * any negligence on the part of the [Indemnitor] * * *" In Russell v. Shell Oil Co., 1949, 339 Ill.App. 168, 89 N.E.2d 415, Russell was under contract with Shell for the painting of its light poles. Campbell, an employee of Russell was injured while painting a light pole which gave way. Russell paid the compensation and brought the action to recover from Shell. Shell set up as an affirmative defense the indemnity contract which provided that Russell would hold Shell harmless from any claim for injury to persons resulting from or arising in connection with Russell's operations. The court said at page 172 of 339 Ill.App., at page 417 of 89 N.E.2d:
 
 
 64
 "It seems clear that the injury to Campbell arose in connection with the `contractor's operations.' As defendant argues, the contract includes all accidents `resulting from or arising in connection with any of contractor's operations'; that `the indemnifying agreement is expressed in clear and explicit language and the intention of the parties is indicated in unequivocal terms.' There is also force in the contention of defendant `that negligence of either party does not enter into the case, because the injury to the employee [Campbell] resulted from or arose in connection with one of the contractor's operations against which he agreed to hold defendant harmless.'"
 
 
 65
 In Northern States Co. Inc. v. A. Finkl & Sons Co., 1956, 8 Ill.App.2d 419, 132 N.E.2d 59, 61, the court permitted the recovery by the Indemnitee "because the injury resulted from or arose in connection with the contractor's operations, against which he agreed to hold [Indemnitee] harmless." The contract was broader than in the instant case, but the injury again resulted from the contractor's operations. In Gay v. S. N. Nielsen Co., 1958, 18 Ill.App.2d 368, 152 N.E.2d 468, a judgment was entered by stipulation against the city, the contractor and the subcontractor for property damage resulting from blasting in the installation of a sewer. The subcontractor, Indemnitee, was in control of this work. The court ignored a paragraph of the contract limiting liability of the Indemnitor to loss arising from its negligence, but allowed recovery under a general provision for indemnification and placed emphasis on the fact that the damage was occasioned by the Indemnitor. In Moroni v. Intrusion-Prepakt, Inc., Ill.App. 1960, 165 N.E.2d 346, 351, plaintiff, a workman was injured and brought an action against the owner and the contractor alleging a violation of the Scaffold Act. G. M. & O. (owner) filed a counterclaim to obtain a judgment against Intrusion (contractor) because Intrusion was obligated to do the construction work, and erected and maintained the scaffold from which the plaintiff fell. (The indemnity contract was not set forth in the counterclaim or attached thereto.) The trial court dismissed the counterclaim and G. M. & O. appealed. The appellate court reversed the trial court and stated:
 
 
 66
 "In the Sollitt and Northern States cases, supra, the owners negligently created the conditions, and their agents committed the acts of negligence resulting in damages for which they sought indemnity. The Russell case, supra, involved the question of whether the accident for which damages and indemnity were claimed could have been considered as resulting from or arising in connection with any of the indemnitors' operations. For the reasons hereinbefore given, we think the G. M. & O. was entitled to indemnification under the contract, even though there was no express provision to that effect."
 
 
 67
 It must be concluded from the foregoing cases that indemnity contracts are not against public policy and that it is decisive to determine in each case whether or not the damages were incurred in the operations contemplated by Indemnitor's contract, and under conditions controlled by the Indemnitor. Under such circumstances the Illinois courts are prone to construe the indemnity contract broad enough in its scope to unequivocally include the liability which the Indemnitee incurred.
 
 
 68
 In the instant case the plaintiff was injured while in the employ of O'Malley during and in consequence of carrying on O'Malley's work which was contemplated by the contract. The equipment used by O'Malley was by the contract to be considered within the "sole custody and control of [O'Malley] during the period of such use by Seller." Any employees of Republic who operated the equipment were by the contract deemed to be employees of O'Malley. Even if Republic's employee failed to place a lock on the switch which cut off the power, his negligence, if any, under the contract, was the negligence of O'Malley.
 
 
 69
 In adopting this construction of the contract we do not impose on O'Malley a duty to indemnify against injuries entirely without her control. The language of the contract is sufficient to unequivocally express the intention of the parties that under the circumstances Republic should be indemnified by O'Malley.
 
 
 70
 There is no validity in O'Malley's contention that she could not be liable for injuries to the plaintiff because she was completely discharged by the Workmen's Compensation Act. The same contention was made in the Moroni case and we agree with Mr. Justice Schwartz wherein he held, under facts similar to the instant case, that the Workmen's Compensation Act did not abolish the right of a third-party to be indemnified by a contract.
 
 
 71
 Since we have held Republic can recover on O'Malley's indemnity contract it is not necessary to prolong this opinion by commenting on the common law right of Republic to be indemnified by O'Malley.
 
 
 72
 O'Malley finally contends that the trial court erred in directing the jury, in the event it returned a verdict in favor of Bounougias to return a verdict in favor of Republic, and against O'Malley in a like amount. There was no conflict in the evidence. All reasonable men in a fair and impartial exercise of their judgment must agree that under the circumstances when Zannis leaned out of the window with the current connected to the crane, and especially to the hoist, he was negligent. It was this negligence which proximately caused the occurrence and the injuries to the plaintiff. No other reasonable inference is justified. There was no issue of fact to be determined by the jury and the district court properly instructed the jury.
 
 
 73
 For the reasons stated the judgment of the district court is
 
 
 74
 Affirmed.
 
 
 75
 CASTLE, Circuit Judge (dissenting).
 
 
 76
 I would reverse. Plaintiff predicates liability not on negligence of Republic in permitting O'Malley's employees to use the trolley of the crane as a place to stand while cleaning and painting the ceilings and beams but solely upon a breach of the provisions of the Illinois Structural Work Act. Ill.Rev.Stats., Ch. 48, § 60 et seq.
 
 
 77
 It is my opinion that the facts established by the record do not permit application of the Illinois statute. The purpose of the crane and its trolley was not to afford a place for painters or workmen to stand while painting or doing repair work. Its purpose along with the 95 other such cranes in the building was for moving materials in process in the plant. O'Malley found the trolley of the crane a convenient place for the painters, including plaintiff, to stand while performing the work. Republic permitted the trolley to be so used. Other painters and repairmen had worked from the trolley. But neither the crane nor its trolley was a scaffold, hoist, crane, stay, ladder, support or other mechanical contrivance which, in the language of the statute, was "erected or constructed * * * for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure". The crane and trolley were part of the plant's operating machinery and equipment. It was not a device for use in the erection, repair, alteration, removal or painting of the structure. Nor, on the facts here involved, was the trolley a make-shift or substitute scaffold. It did eliminate the use of a scaffold but only because the parties found it a convenient place from which to do the work. That the statute is to be liberally construed does not in my opinion afford a basis for extending its scope to embrace the factual situation here involved.