Walter P. Frick, Plaintiff-Appellant, v. O'Hare-Chicago Corporation, Defendant-Appellee, and Chell & Anderson, Inc., a Corporation, Defendant.

Gen. No. 50,717.

First District, First Division.

May 9, 1966.

Francis A. Boyle and Milton Yondorf, of Chicago, for appellant.

Jacobs and McKenna, of Chicago (John C. Bartler and Barry L. Kroll, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a Scaffold Act case, in which plaintiff was injured when he fell from an unsecured plank, which was on top of a wooden form into which concrete was to be poured. A summary judgment was entered in favor of

the defendant owner. The action against the defendant contractor is still pending. The trial court found there was no just reason for delaying enforcement or appeal from the judgment order, and plaintiff appeals.

■■■■■ In a summary judgment, the right of the moving party should be free from doubt, and the whole record must be considered. If, upon an examination of the pleadings, depositions, affidavits and admissions on file, it can be fairly said that there is a genuine issue as to any material fact, a motion for a summary judgment should be denied. On the other hand, where the record shows there is no triable issue of fact, a summary judgment will be granted. People ex rel. Sharp v. City of Chicago, 13 Ill2d 157, 160, 161, 148 NE2d 481 (1958); Tuohey v. Yellow Cab Co., 33 Ill App2d 180, 183, 180 NE2d 691 (1962).

On November 29, 1961, plaintiff, Walter P. Frick, was working as an electrician for an electrical contractor, Henry Newgard & Company, on an addition to the O'Hare Inn in DesPlaines, Illinois. Defendant O'Hare-Chicago Corporation was the owner of the premises. Defendant Chell & Anderson, Inc., was on the job site under a contract for "masonry and carpentry work."

On the day of the occurrence, plaintiff was informed by the foreman of defendant Chell & Anderson that plaintiff should take measurements for an electrical wire conduit pipe, which was to be placed in a form into which concrete was to be poured on the following day. The form was in an excavation and was made of 1-inch plywood with 2 x 4's on top, secured by braces to the side of the form. An unsecured 2 x 6 plank was on top of and parallel with the 2 x 4's. The form was 14 feet high from the basement level, and its top was reached by walking on a plank from the unexcavated ground.

Plaintiff took the measurements while standing on the 2 x 6 plank, and as he turned to leave, the board slipped

305

and he fell to the ground. Then, to get out of the basement, he used "a big ladder that a lot of workers used to get in and out of the basement."

The complaint had two counts, the first of which was based on common-law negligence. The second count, based on the Structural Work Act (Ill Rev Stats 1963, c 48, §§ 60–69) alleges that defendant O'Hare "owned, managed, and controlled" the premises and "hired as their agents and servants, the defendant, Chell and Anderson, Inc., a corporation, to do repairs and alterations" on the building, and while acting both on their own behalf and as agents and servants of defendant O'Hare, defendant Chell & Anderson "constructed a scaffold, support or stay on said premises," which was "negligently erected and maintained," as a result of which plaintiff was injured.

The answer of defendant O'Hare admits ownership of the premises, but (1) denies that it managed, controlled or was in possession of that portion of the premises involved; and (2) denies that Chell & Anderson were hired as agents and servants of O'Hare or that they constructed a scaffold or support as agents and servants of O'Hare. O'Hare further denies "that the device referred to in plaintiff's complaint was a scaffold, support or stay."

The answer of defendant Chell & Anderson admits that it was hired to do certain repair work in the building and denies that it was the agent or servant of defendant O'Hare. It further denies that plaintiff was lawfully or rightfully on the scaffold alleged and denies that there was anything wrong or improper with the scaffold.

The summary judgment in favor of defendant O'Hare was based upon (1) an affidavit by the president of defendant O'Hare that "during the construction of the aforesaid addition to the O'Hare Inn, the O'Hare-Chicago Corporation had no one on the premises, either super-

vising, directing or controlling the construction or the method in which the construction was done"; (2) an affidavit which set forth extracts from defendant's discovery deposition relating to the occurrence and the nature of the alleged scaffold; (3) a counteraffidavit which set forth extracts from the contract between defendant owner O'Hare and defendant contractor Chell & Anderson; and (4) interrogatories and answers.

During the pendency of the motion for summary judgment, the court entered orders which (1) struck a counteraffidavit by plaintiff, and (2) sustained objections by both defendants to interrogatories filed by plaintiff to be answered by both defendants. Plaintiff has also appealed from these orders.

Considered first is defendant's contention that the plank from which plaintiff fell was not "a 'scaffold' within the meaning of the Structural Work Act." Cases cited include Thon v. Johnson, 30 Ill App2d 317, 174 NE2d 400 (1961); Welk v. Jackson, Architectural Iron Works, 184 NY 519, 76 NE 1116 (1906); Broderick v. Cauldwell-Wingate Co., 301 NY 182, 93 NE2d 629 (1950); Remelius v. Corbetta Const. Co., Inc., 265 App Div 827, 37 NYS2d 843 (1942), and others. In Thon v. Johnson, plaintiff was injured when he fell from an erected form into which concrete was to be poured. The court said (p 322):

"... we do not feel that the cement form upon which plaintiff stood in the case at bar can be considered to be a scaffold within the meaning of the statute. We are aware of the rule that our statute should be liberally construed, but if the statute were construed so as to cover the concrete form involved in this case, such a construction of the statute would be equivalent to holding that each and every place where a workman chooses to stand thereby becomes a scaffold within the meaning of the statute. ..."

307

On the contrary, the authorities discussed herein appear to be quite pertinent and lend support to our conclusion that the concrete form involved in this case was not a scaffold within the meaning of the statute."

The authorities referred to in Thon v. Johnson include Haughey v. Thatcher, 89 App Div 375, 85 NYS 935, where plaintiff stood on a temporary arch structure because the work he was engaged in could be done more easily and in less time. The men working on the arches were furnished with scaffolding, but they stepped on the temporary arches to sustain their weight for personal convenience in working.

In Ericson v. Bradley Contracting Co., 150 NYS 169, where a carpenter stood on a water pipe which gave way, the court said (p 170) :

"A temporary resting place for footing or support is incidental to the performance of the work, and to call such a place a 'scaffold' is a wrench, not only of the language, but of the intent, of the Legislature."

In Adelstein v. Roebling Const. Co., 95 Misc 125, 159 NYS 36, an ironworker was injured when he stepped on a concrete form, and the court said (p 38) :

"The 'form' which gave way below the plaintiff's weight . . . was not intended, designed, or constructed for the purpose of supporting a workman in any event or on any occasion. It was used and intended to be used exclusively as a framework to contain and hold, while hardening, a section of concrete which, when 'set' became a part of the floor. Even if the defendant . . . either permitted or authorized persons occasionally to step upon or pass

over this 'form,' . . . that would not change the character of the structure into a scaffold."

Defendant O'Hare, in commenting on plaintiff's authorities in which planking, erected as platforms to work from, were held to be scaffolds, admits "if planking is erected as a platform, it is a scaffold. This is true whether or not the planks find their foundation on permanent parts of the structure or otherwise." Defendant argues, however, "these cases are inapposite to the one at bar because here plaintiff was not working on planking built as a platform but, rather, he was standing on the form itself of which the 2 x 6 plank was merely a covering."

Defendant's authorities are not persuasive here because of factual differences. In the instant case, the 2 x 4's attached to the top of the form, and the 2 x 6 plank resting on top of them, and used by plaintiff, must have been placed there to serve some purpose. They were in position before plaintiff was instructed to take his measurements, and the extracts taken from plaintiff's deposition show that "everybody walked on 2 x 4 boards constituting the top of the form and on the 2 x 6 board which was on top of these." The form was 14 feet high, and as the measurements had to be taken from its top, plaintiff had to stand on something, and the record indicates that the 2 x 6 plank was the only platform available to him. On trial, in the absence of contrary evidence, the testimony of plaintiff, if consistent with the extracts taken from his deposition, should be sufficient to show that the plank was intended to be and was used as a scaffold, support or mechanical contrivance in connection with construction of the addition, and within the purview of the Scaffold Act. See Oldham v. Kubinski, 37 Ill App2d 65, 85, 185 NE2d 270 (1962).

The basic question on this appeal is: Does an examination of this entire record show fairly and without doubt

that there is no genuine issue as to whether defendant O'Hare came within the Structural Work Act term of "having charge of" the construction work, during the performance of which plaintiff was injured?

It is unnecessary to review all of the authorities cited by both sides which have construed the statutory import of these words. The recent pronouncements of our Supreme Court in Larson v. Commonwealth Edison Co., 33 Ill2d 316, 211 NE2d 247 (1965), are controlling on this issue, and it is said (pp 321, 322) :

> "The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it. As was said of the word 'charge' in People v. Gould, 345 Ill 288, 323: 'The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. "To have charge of" does not necessarily imply more than to care for or to have the care of.' Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is 'in charge,' they are not necessary or conclusive factors, nor is either made a sine qua non for liability under the statute. . . . the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure.
>
> "In the Gannon case (22 Ill2d 305,) where it was expressly noted that the owner involved had 'exercised no control over the manner in which the work

310

was being done,' (p 307,) we held that an owner must have some direct connection with the operations, over and above mere ownership or the employment of an independent contractor, and indicated that the question whether the particular connections and activities in a given case were such that an owner could be deemed to have charge was a question of fact for the jury to determine. Nothing in Gannon suggests or holds that either the exercise of supervision and control, or the retention of the right to do so, are essential ingredients for having charge. And manifestly, the plain language of the statute does not limit duty and liability to owners retaining control and supervision of the work as the instruction suggests. The inclusion of the words 'by retaining supervision and control of the work' placed a greater burden on plaintiff than the law required and was improper."

Defendant's answer and supporting affidavits, at the most, deny that defendant O'Hare had anyone "on the premises, either supervising, directing or controlling the construction or the method in which the construction was done." Plaintiff's counteraffidavit, which we believe should have been considered by the trial court, states:

"2. That employees or officers or both of O'Hare-Chicago Corporation, which had contracted for this addition, were present from time to time at the construction site, inspected the construction work and the progress of construction, were in charge thereof and were in a position to issue orders as to how the construction should proceed if they felt it was not proceeding in the way it should proceed or if anything was not safe or in proper order. That this authority and power extended not only as to what work was to be done, and as to the quality of the

311

work to be done but also as to the manner in which it was to be done. . . ."

Conceding plaintiff received no direct instructions from defendant O'Hare or its agents, plaintiff's deposition extracts, set forth in defendant O'Hare's affidavit, contain nothing which militates against the foregoing counteraffidavit of plaintiff.

■■ Defendant O'Hare's statements that it had no control or supervision, whether conclusions or ultimate facts, are disputed by plaintiff's counteraffidavit. From these affidavits, which we consider in their factual import, no one can fairly say that this record shows without doubt that defendant O'Hare, as owner, does not come within the provisions of the Scaffold Act. Moreover, even if undisputed, defendant's affidavit is not sufficient, standing alone, to show the defendant is without the scope of the Act. As said in Larson v. Commonwealth Edison Co. (p 322) :

". . . while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is 'in charge,' they are not necessary or conclusive factors, nor is either made a sine qua non for liability under the statute."

■■ This entire record does show a genuine issue exists as to whether defendant O'Hare had "some direct connection with the operations, over and above mere ownership or the employment of an independent contractor," and indicates that "the question whether the particular connections and activities" in this case were such that defendant O'Hare could be deemed to have charge was a question of fact for a jury to determine. (Larson v. Commonwealth Edison Co., (p 322).) Therefore, a

genuine issue of a material fact being present, the summary judgment should not have been granted here.

Because of the foregoing determination, we have not considered the propriety of the trial court's orders which sustained objections to many of plaintiff's interrogatories. We suggest that leave be given to plaintiff to submit new interrogatories grounded on this opinion.

For the reasons given, the summary judgment in favor of defendant O'Hare is reversed and the cause is remanded for further proceedings in accordance with the views expressed herein.

Reversed and remanded.

KLUCZYNSKI, P. J. and BURMAN, J., concur.