(152 App. Div. 476.)

### WRIGHT v. SMITH et al.

(Supreme Court, Appellate Division, Second Department. September 10, 1912.)

NEW TRIAL (§ 159*)—DETERMINATION—INJURY TO WORKMAN—FALL FROM TRESTLE.

In an action for injury to a workman, who fell from a trestle on a building, defendants *held* entitled to a new trial, on verdict for plaintiff.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 319, 335; Dec. Dig. § 159.*]

Woodward, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Julia F. Wright, as administratrix of Frederick W. Wright, deceased, against Charles D. Smith and another, partners. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, WOODWARD, and RICH, JJ.

James J. Mahoney, of New York City (M. J. Wright, of New York City, on the brief), for appellants.

Don R. Almy, of New York City, for respondent.

THOMAS, J. Defendant's servant stepped on a plank on a trestle. The plank tipped or slipped, and the defendant fell upon a brace below, where the short remnant of a stringer, falling, hit him. So the jury has found. That the plank slipped, that decedent fell, and that the timber hit him, one Nelson, his fellow servant, alone testifies. That he fell through a misstep, and, grasping the short timber, carried it away, so that it fell upon him, Williamson, foreman at the time, alone testifies. Each man states that he was looking at him at the instant. Nelson, a foreigner, is less clear in his general evidence; but Williamson's credibility is impaired by evidence of decedent's brother that Williamson told him what would indicate that he did not see the man when he fell. That the plank itself did not fall is probable, but the question as submitted to the jury was whether the plank canted or tipped and let him fall.

It cannot be said that the finding is against the weight of the evidence. But the court charged that the case fell under the Labor Law, and that the trestle was a structure, and the planking a scaffold. The question discussed is whether the place where the man fell was a scaffold. The trestle was in the course of construction, and its intended use was for a temporary tramway for dirt cars connected with building a tunnel. It was to consist of a series of braced bents, on which were longitudinal girders. The bents were in place, with certain bracing. Some of the stringers were in place. One was on the bents, but not carried forward to its position, and others were below waiting to be raised and placed. Each bent consisted of two vertical posts erected on the floor of a pier, with a crosspiece or cap fastened at the top. They were braced, and the stringers, in length from 24 to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

36 feet, ran on each side, as stated. While doing the work on the bents, it was necessary to have temporary planks to space the bents, which were 8 feet apart. The planks were scaffolding material, 10 inches wide, 14 to 16 feet long. There were usually two planks, laid a few inches apart laterally, and at their ends one plank overlapped the on-continuing walk; but the planks were moved and used as the exigencies of the work required.

Are planks laid along a trestle for a way, on which workmen pass to and fro, and on which they stand, as necessity and convenience require, to raise up and set in place the constructing material, scaffolding, within the meaning of the Labor Law? Webster defines a scaffold as:

"A temporary structure of timber, boards, etc., for various purposes, as for supporting workmen and materials in building, for exhibiting a spectacle upon, for holding the spectators at a show, etc."

It is a structure that holds laborers or materials to raise them to a height. Such a structure includes, necessarily, a floor and a support for it. The support need not be independent timbers running to the ground, for scaffolds are customarily strung from or supported by attachments to the structure itself. But in such case the attachments are usually independent of the structure. Here the flooring is laid on the structure, and has no structure of its own. The support is not temporary; it is not built to carry workmen; it, with the boards across it, is not constructed to raise up workmen, so that they can reach work aloft. The workmen are making the structure, and, to stand upon and reach from one part of it to another, boards are laid over the frame. In the same way rough boards are laid on floor timbers, on which men stand or walk about, while doing work preparatory to laying the temporary floor, shifting the boards from time to time as the work requires. The flooring may be scaffolding timber; but I doubt whether a carpenter would consider loose boards laid across beams for temporary purposes as a scaffold, and much less would it be expected that such boards should be nailed down.

The scaffold contemplated by the statute is something erected; but where temporary boards are placed on a structure, to be shifted hither and yon as the work shifts, something is not erected. Staging is not erected or placed. A temporary way is made. Whether such a way as the Employer's Liability Act intends need not be discussed. I can conceive that the statute here involved could be wrenched wide enough to cover loose boards as customarily laid down for passage on uncovered beams of structures in the course of erection; but such an expedient is not within the usual meaning of the language used, whereby the intention is to be learned.

The judgment and order should be reversed, and a new trial granted; costs to abide the event.

RICH, J., concurs. JENKS, P. J., and BURR, J., concur in result. WOODWARD, J., dissents.