ERICSON v. BRADLEY CONTRACTING CO.

(Supreme Court, Trial Term, New York County. November 25, 1914.)

1. MASTER AND SERVANT (§ 116*)—DEATH OF SERVANT—"SCAFFOLD"—LABOR LAW.

Plaintiff's intestate, a carpenter, while cutting a hole in the side of a lumber chute used to carry concrete from the street into the subway, stood on a water pipe supported by a trestle. The pipe was part of the city's water system, and the trestle was a temporary support, which had been erected for it prior to its removal to its proper place under the sidewalk when the subway was finished. Beams lay alongside the pipe, so that it rested on a 24-inch platform. On the inside of the subway, the platform extended about 6 inches beyond the pipe, and deceased was standing with one foot on this edge of the beam and the other foot on top of the pipe. After finishing his work, he started to walk along the pipe to another place, when he fell and was killed. Neither the pipe nor the platform broke, and there was no evidence that the pipe was slippery. Held, that the pipe was not a "scaffold" furnished or erected by the defendant contractor, within Labor Law (Consol. Laws, c. 31) § 18 (1), providing that a person employing another to perform labor of any kind in the erection of a structure shall not furnish or erect scaffolding which is unsafe, etc.; the word "scaffold," as so used, meaning a temporary structure of timber, boards, etc., to support workmen and materials.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*

For other definitions, see Words and Phrases, Second Series, Scaffold.]

2. MASTER AND SERVANT (§ 233*)—DEATH OF SERVANT—SAFE PLACE TO WORK.

Since the conditions under which deceased was working were constantly changing, and he chose his own place to work and the particular place in question, the pipe being in a mere temporary location, while work was going on about it, and its position was changed as the exigencies of the work required, the doctrine of "safe place" did not apply.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 684–686, 701–742; Dec. Dig. § 233.*]

3. MASTER AND SERVANT (§ 281*)—DEATH OF SERVANT—CONTRIBUTORY NEGLIGENCE.

Where plaintiff's intestate, a carpenter, being directed to cut a hole in the side of a lumber chute used to carry concrete into the subway, took a position on a city water pipe temporarily supported by a trestle, and after finishing his work started to leave the place, when he fell from the pipe and was killed, such facts were insufficient to raise an inference that deceased was free from contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 987–996; Dec. Dig. § 281.*]

Action by one Ericson against the Bradley Contracting Company. On motion for new trial after a verdict directed for defendant. Denied.

Henry Leon Slobodin, of New York City, for plaintiff.
Frederick L. C. Keating, of New York City, for defendant.

GOFF, J. Plaintiff's intestate, a carpenter, was engaged in cutting a hole in the side of a lumber chute which carried concrete from the street into the subway. He was standing on a water pipe 12 inches

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in diameter and about 18 feet above the bottom of the subway. The testimony as to the details of the "place" is not very clear, but it appears that this pipe was supported by joists, making what was called a "trestle," that the pipe was a city water pipe, that the "trestle" was merely a temporary support for the pipe, and that when the work should be completed the pipe would be taken back and put in its proper place under the sidewalk. The plaintiff's witnesses admitted that the plaintiff's intestate and his fellow workmen did not build temporary scaffolds when there was something else to stand on for the time being, that the workmen themselves from their experience made the places to stand on and chose them, that the deceased's work was changing all the time, that he kept making the place to work, and that the place was choked full of timbers. Beams lay alongside of the pipe, so that the pipe rested on a 24-inch platform. On the inside of the subway this platform extended about 6 inches beyond the pipe, and the deceased was standing with one foot on this edge of the beam and the other foot on top of the pipe.

There is no exact testimony as to the details of the "place," since the plaintiff's chief witness testified, in regard to his knowledge of the measurements of the "place," "Some of the people told me." The deceased had tools in his hand, a saw, an ax, and probably a hammer. "He turned. The work had ceased. He was going away to another place." He started to go along the pipe, fell, and was killed. Neither the pipe nor the platform broke. There is no testimony that the pipe was slippery. Has the plaintiff made out a cause of action (1) under section 18 of the Labor Law, or (2) under the common law as to a safe place in which to work?

[1] 1. Section 18 of the Labor Law reads:

"A person employing * * * another to perform labor of any kind in the erection * * * of a * * * structure shall not furnish or erect * * * for the performance of such labor scaffolding * * * which are [is] unsafe," etc.

Even assuming the subway to be a "structure," there is no evidence to show that the pipe upon which deceased stood was a "scaffold," nor that it had been furnished or erected by the defendant. In common understanding the word "scaffold" means "a temporary structure of timber, boards, etc., for various purposes, as for supporting workmen and materials in building." Caddy v. Interborough R. T. Co., 195 N. Y. 415, 88 N. E. 747, 30 L. R. A. (N. S.) 30. This is not alone the definition of the lexicographer, but the judicial construction of the meaning of the word as used in the statute. Emphasizing this construction is the language used in Wright v. Smith, 152 App. Div. 476, 137 N. Y. Supp. 264, that "the scaffold contemplated by the statute is something erected." This "something erected" cannot be construed as including anything that may be seized on or utilized by a workman for his convenience to meet the requirements of changing locations or conditions. A temporary resting place for footing or support is incidental to the performance of the work, and to call such place a "scaffold" is a wrench, not only of the language, but of the intent, of the Legislature. This intent was most liberally recognized by the Court of

Appeals in Quigley v. Thatcher, 207 N. Y. 66, 100 N. E. 596, when it said:

"This statute is one for the protection of workmen from injury, and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was  *  *  *  framed."

Under this interpretation, while admitting that were the Labor Law to be strictly construed the employé of a subcontractor could not recover from a contractor, yet under certain circumstances the contractor might be held liable to such employé for the insecurity of a "scaffold." When the Legislature used the word "scaffold," it used a word of definite meaning and one susceptible of precise application; and to inject into that meaning what was neither expressed nor intended would be judicial legislation, and not interpretation. To broaden the scope of the reasoning in the Quigley Case is for the Legislature, and when the language used in the statute is plain and unambiguous there is nothing to interpret. It is not for this court to say that, when the Legislature required safe scaffolding to be furnished, it meant anything wider or narrower in scope than its plain expression.

[2, 3] 2. The doctrine of a safe place to work does not apply to this case. The pipe was in a temporary location while the work was going on about it, and its position was changed as the exigencies of the work required. The pipe had nothing whatever to do with the construction work. There is no evidence that the deceased was ordered by any one to go upon this pipe, so that section 200 of the Labor Law is inapplicable. All of plaintiff's witnesses agreed that the conditions where deceased was working were constantly changing; that the deceased chose his own place to work and the particular place in this case. Furthermore, viewing the case as an action at common law, there is an entire absence of testimony showing the deceased's freedom from contributory negligence. To have submitted the case to the jury would have invited speculation, conjecture, and surmise.

On the whole case, as stated on the granting of the motion to dismiss the complaint, I am of the opinion that there was no question for the jury to pass upon. I therefore deny the motion for a new trial.