Albert Oldham, Plaintiff-Appellee, v. John Kubinski, Leonard Kubinski, Bernard Kubinski and Donald Kubinski, d/b/a John Kubinski & Sons, Defendants-Appellants.

Gen. No. 11,572.

Second District, Second Division.
September 19, 1962.
Rehearing denied October 9, 1962.

65

Andrew J. Farrell, of Chicago, and Gray, Thomas, Wallace & O'Brien, of Joliet, for appellants.

Robson, Masters, Ryan & Belom, of Joliet (Frank H. Masters, Jr. and Sidney Z. Karasik, of counsel), for appellee.

CROW, J.

This is an appeal by the defendants from a judgment for $50,000 in favor of the plaintiff, Albert Oldham, against the defendants John Kubinski, Leonard Kubinski, Bernard Kubinski and Donald Kubinski, d/b/a John Kubinski & Sons. Anton Brozovich, who was also a party defendant and who was alleged to have been the agent, servant and employee of these defendants, was found "not guilty" and a judgment to that effect was entered thereon. No appeal has been taken from that judgment finding Brozovich "not guilty." The case was submitted to the jury as to all the defendants, their motions for directed verdicts at the close of the plaintiff's evidence and of all the evidence being denied. The verdict was not guilty as to the defendant Brozovich, and guilty as to the defendants Kubinski. A post-trial motion which consisted of a motion for judgment for the defendants notwithstanding the verdict was filed by these defendants, and

was denied. The notice of appeal asks the judgment be reversed and judgment be entered for the defendants or the cause be remanded with such instructions.

It is charged in the amended complaint that the plaintiff, as a laborer, was engaged July 3, 1958, in the removal and destruction of a certain building or structure located on the northwest corner of Joliet and Van Buren streets in the City of Joliet; the defendants, John Kubinski & Sons, were engaged as subcontractors in the destruction and removal of the walls of said building; said defendants owned a certain hoist or mechanical contrivance which was being operated by their agent, servant and employee, the defendant Anton Brozovich; the hoist or mechanical contrivance was being used as a scaffold or working hoist and the plaintiff was working thereon; there was then in effect the Structural Work Act, Ch 48 Ill Rev Stats, 1957, pars 60–69, certain applicable language thereof being alleged; it was the duty of the defendants to place and operate the scaffold or working hoist or mechanical contrivance in a safe, suitable, and proper manner so as to afford proper and adequate protection to the plaintiff; the defendants were guilty of one or more of the following wilful violations or omissions: wilfully failed to place, and operate said hoist or mechanical contrivance or scaffold in a safe, suitable and proper manner, and wilfully failed to provide a safe, suitable and proper hoist or mechanical contrivance or scaffold to work on, and wilfully provided an unsafe, unsuitable, and improper hoist or mechanical contrivance or scaffold for the plaintiff to work from, and wilfully placed and operated the hoist or mechanical contrivance or scaffold in an unsafe, unsuitable, and improper manner; and as a direct and proximate result of one or more of such wilful violations or omissions, the plaintiff was caused to fall from the hoist or mechanical contrivance or scaffold to the ground and suffered serious injuries.

72

The answer of the defendants, John Kubinski & Sons, admitted the plaintiff's work, and that they were engaged as a subcontractor in the removal and destruction of the walls of said building; denied they owned a hoist, but admitted that they owned a certain Drott loader which was being operated by the defendant Anton Brozovich on behalf of the plaintiff, but not on behalf of and in the course of operation or business of John Kubinski & Sons; denied it was used as a hoist or mechanical contrivance and that the plaintiff was working thereon; denied that the Structural Work Act, Ch 48 Ill Rev Stats, 1957, pars 60–69, has any application to the facts and circumstances, though admitting it was in effect; and they denied all the allegations as to their alleged duty, violations of duty, direct and proximate result, and injuries.

The defendants-appellants contend that there was a total failure to prove that the defendants wilfully violated or failed to comply with any provisions of the Structural Work Act; the Court should have directed a verdict for these defendants or entered a judgment in their favor notwithstanding the verdict; the defendants did not have charge of the work being performed at the time of the accident; the plaintiff's injuries were not caused by a scaffold, hoist or mechanical contrivance within the meaning of the Structural Work Act, but rather by the work itself; the Drott skid shovel was not a scaffold, hoist, or mechanical contrivance within the Act; there is no proof that a wilful violation of the Act by these defendants proximately caused the plaintiff's injuries; the injuries proximately resulted from an accident caused by the breaking of a pipe joint with a sledge hammer by the plaintiff, the pipe and hammer being owned by his employer; the shovel was not defective in any manner; the shovel was erected and constructed by Drott Manufacturing Co., not by the defendants; and the verdict of not guilty and judgment in favor of the defendant Anton Brozovich, their em-

73

ployee, is res judicata and a complete bar to recovery by the plaintiff against these defendants because the liability of these defendants is based upon the doctrine of respondeat superior.

The plaintiff-appellee's theory is that the verdict of guilty against these defendants is not inconsistent with the verdict of not guilty as to the defendant Brozovich, their employee; the defendants' violation of the Structural Work Act does not follow from or is not based upon the theory of respondeat superior, but rests on their own fault, independent of their servant, in permitting the machine to be used as a lifting platform from which the plaintiff fell; the gist of the action is not a defect in the machine as a debris remover but in its unsafe use as a temporary scaffold, for which purpose it was dangerous; the defendants are liable under this Act because they knew and approved of the practice of lifting men in this loader as a mobile platform, for which it was not safe; whether these defendants furnished an unsafe, unsuitable, and improper scaffold, whether such proximately caused the injuries, and whether the credibility of the plaintiff or other witnesses was affected were all issues for the jury; and there is sufficient competent and credible evidence to support the verdict and there is no reversible error.

It appears from the evidence that the plaintiff, Albert Oldham, was employed on the day in question, July 3, 1958, and prior thereto by William Wolfe, d/b/a Joliet House Wrecking Co., as a laborer. A contract had been entered into between William Wolfe and the defendants, John Kubinski & Sons, on March 7, 1958, whereby these defendants agreed to furnish all equipment and operators to complete the removal of walls and dispose of debris, and level property as per plans and specifications by the City of Joliet, at the Northwest Corner of Joliet and Van Buren Streets, in a substantial and workmanlike manner, for which Wil-

74

liam Wolfe agreed to pay those defendants $3300. Anton Brozovich was in the employment of the defendants, John Kubinski & Sons, and was operating a Drott loader or shovel in connection with the demolition of the buildings. Leonard Kubinski, a member of the partnership doing business as John Kubinski & Sons, testified that the defendant partnership owned an International 7–D, 14 Crawler tractor with top skid shovel attached to it, and that Anton Brozovich was employed by the defendant partnership, and operated the tractor and bucket or shovel attached thereto. The plaintiff, Albert Oldham, got into the bucket or shovel with a sledge hammer belonging to Mr. Wolfe in order to be raised by Brozovich so that he could break the coupling on a couple of 20′–22′ lengths of pipe that were attached to the side of a beam of the building by metal hangers, the right end being loose or unconnected. By being so raised up he could break the coupling and the pipe would fall to the ground. The plaintiff had broken pipe for Mr. Wolfe before. A truck driver for Mr. Wolfe was around to pick up iron, the iron being some of this pipe, to haul to Mr. Wolfe's place. It was Mr. Wolfe's pipe. The bucket of this shovel, with the plaintiff in it, was stopped when it was about 12 feet above the floor. Shortly afterwards the plaintiff struck with the sledge hammer the coupling or joint of two lengths of pipe which were attached to the beam, and after the coupling broke, one length of pipe fell, and simultaneously therewith or shortly thereafter the plaintiff himself fell to the floor and sustained serious injuries. Leonard Kubinski said he did not know whether Brozovich had ever raised Oldham in the bucket before, but he said he knew their men had raised men up in the bucket on this and other machines before.

This Drott loader shovel was attached to the front end of the defendants' International Harvester crawler

tractor. On the fore part of the loader is a lift arm bucket or shovel, which is manufactured by the Drott Manufacturing Co. The bucket alone weighs 1,620 pounds. The machine was primarily an excavating, loading, or stock piling machine for moving earth, loose construction material, or any inner type of material. It is used for back filling excavations, and for use during demolition, removing debris, brush, etc., and in breaking concrete, roads, etc., and rough grading. The length of the bucket (from front to back) is between three and four feet, it is eight feet in width (across), and the depth is twenty-six to twenty-eight inches at the sides and front and thirty-six inches in the back, and the bottom of the bucket or shovel has a concave curved surface. There are several photographs of the tractor and loader-shovel in the record.

There were only two persons at the immediate scene of the accident when it occurred, namely, the plaintiff, Albert Oldham, and Anton Brozovich. The latter testified that he was employed by John Kubinski & Sons and was employed by them on this day; that Mr. Wolfe asked if he would take the man (Oldham) up so that he could break the pipe joint with the sledge hammer; he said he would; the plaintiff got in the bucket with a sledge hammer 28″–30″ long and 10 lbs. in weight; he took Oldham up 10 or 11 feet; that he had raised Oldham or another man up in the bucket on other days; that when he got the bucket in an upright position he saw the plaintiff move forward and disappear from sight; the loader was then about level with the top of the beam. The beam made a kind of quiver. Later he heard pounding on a joint. He thinks he heard three blows and then the joint broke, which caused the right end of the pipe to teeter down. The right hand end went down, and the other end went up; the plaintiff fell on the other side of the beam; he is not sure whether Oldham fell from the bucket or not. The

76

bucket did not move at any time while it was upraised until he got out to go over and help the plaintiff after the fall. He heard nothing hit the bucket. To his knowledge the pipe did not strike the bucket.

On cross examination of the plaintiff, a foundation was laid to seek to impeach him by statements purportedly made by him on July 23, 1958 at St. Joseph's Hospital in the presence of a court reporter. This court reporter was called as a witness and stated that from her notes the plaintiff admitted that he requested Brozovich to take him up in the high-lift; he was standing partly on the beam and partly on the bucket; he had one leg on the beam and one leg on the high-lift; the hammer jostled the pipe; the pipe hit the high-lift and bounced back up; the pipe did not hit him, but he lost his balance in trying to get away from it, and fell to the floor below. At the trial he did not remember making some of the statements.

The plaintiff testified at the trial that he was employed by William Wolfe and had been so employed for four months as a laborer; he had been lifted by Brozovich in this bucket before on this same job, tearing down the wall, raising him up on the wall, and he got in the bucket on the morning of July 3, 1958; he was acquainted with Brozovich and Brozovich was the operator of the bucket on previous occasions; he'd never spoken to Brozovich; before he got into the bucket he talked with Mr. Wolfe; Mr. Kubinski was not there; when he got into the bucket Brozovich raised him up as high as it would go; he had a sledge hammer belonging to William Wolfe; when he was raised up he tried to break the coupling on the pipe; the pipe was a 6 inch steel pipe with cast iron couplings; he had worked with this type of pipe before; the length of pipe was about 22 feet and it weighed approximately 800 pounds; when he would break the coupling the pipe would be expected to fall to the

77

ground; he was in the center of the bucket, standing up; he said his footing was solid; the bucket was slippery inside and shiny; when the pipe fell one end went first and the other end of it hit the front corner of the bucket on the east side, jarred the bucket, and he fell over backwards and out on the west side. The bottom of the bucket was curved, semicircle; he did not have one foot on the beam at any time; and he did not notice any defects in the structure or condition of the bucket or shovel at the time.

The defendants urge that the plaintiff's statement prior to trial that he fell in backing away after the joint was broken is impeaching inasmuch as the plaintiff testified at the trial that one end of the pipe hit the corner of the bucket on the east side, jarred the bucket, and he fell over backwards and out on the west side. Even if that statement were to be considered as contradictory, we cannot say the jury should necessarily have adopted the conclusion of the defendants in this respect. The credibility of a witness, including a party, is for the jury to determine; evidence of prior inconsistent statements of a witness, if inconsistent, does not afford substantive proof of the truth of the facts therein stated, but is admissible to impeach the credibility of the witness; the jury is at liberty to draw an inference that the witness was either mistaken or corrupt in his testimony; prior inconsistent statements do not affect the competency of the testimony of the witness, or render his testimony nugatory: 37 ILP pp 221-222; Cf. Chicago City Ry. Co. v. Tuohy (1902) 196 Ill 410, 63 NE 997, Haskell v. Siegmund et al. (1960) 28 Ill App2d 1, 170 NE2d 393, Ivy v. Chicago Transit Authority et al. (1959) 23 Ill App2d 251, 161 NE2d 881.

William Wolfe testified that he was on the premises on the morning of July 3, 1958, but he didn't see the accident; he saw the operator of the machine, Brozovich, but he had no conversation at any time that morn-

ing with the operator; he did not ask Brozovich if he would take the man up so that he could break the pipe with the sledge-hammer; the operator was not under his control.

The Structural Work Act,—Ch 48 Ill Rev Stats 1957, pars 60 and 69,—provides, so far as material, as follows:

"60. Sec. 1. That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, . . ."

"69. Sec. 9. Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereof, . . .

"For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; . . ."

The defendants argue that the liability of these defendants rests on the conduct of their employee Anton Brozovich, under the doctrine of respondeat superior, and that the verdict and judgment of not guilty

79

for the defendant employee Brozovich is res judicata and a bar to recovery by the plaintiff against these defendants, his employers. In particular, the defendants call attention to the fact that the only person on the premises connected with these defendants at the time of the accident was Brozovich, and they also call attention to an allegation in the amended complaint as follows:

"3. That the defendants John Kubinski, Leonard Kubinski, Bernard Kubinski and Donald Kubinski, d/b/a John Kubinski and Sons, owned a certain hoist or mechanical contrivance which was being operated by his agent, servant, and employee, the defendant, Anton Brozovich."

The amended complaint charged these defendants themselves with owning this instrumentality, which was being used as a scaffold or working hoist, the plaintiff was working thereon, their duty was to place and operate it in a safe, suitable, and proper manner so as to afford proper and adequate protection to the plaintiff, they wilfully violated or omitted to comply with the Act by failing to place and operate it in a safe, suitable, and proper manner, or by failing to provide a safe, suitable, and proper hoist, etc. to work on, or by providing an unsafe, unsuitable, and improper hoist, etc. for the plaintiff to work from, or by placing and operating the hoist, etc. in an unsafe, unsuitable, and improper manner. The amended complaint, in effect, charged two possible grounds of liability as against these defendants,—one as to the operation, as such, of the instrumentality, and the other as to the placement or providing of the instrumentality or failure to place or provide a scaffold etc. in a safe, suitable, and proper manner so as to give proper and adequate protection to the life and limb of the plaintiff as a person employed or engaged thereon. Merely be-

80

cause these defendants employers are derivatively responsible for the acts of their employee Brozovich occurring within the scope of his employment does not mean that when the employee is acquitted of a charge of liability by a judgment thereon such acquittal is to be imputed to the benefit of the defendants employers as conclusive affirmative proof of their own freedom from liability. These defendants could be liable aside from the acts or conduct of their employee Brozovich: Voss Truck Lines, Inc. et al. v. Pike et al. (1953) 350 Ill App 528, 113 NE2d 202. The Structural Work Act imposes a statutory liability in cases of wilful failure to comply with it upon the owner, contractor, subcontractor, foreman or other person having charge of, inter alia, the removal of any building, its object being to prevent injuries to persons employed in dangerous and extra hazardous occupations so that negligence on their part in the manner of doing their work might not prove fatal: Fetterman v. Production Steel Co. et al. (1954) 4 Ill App2d 403, 124 NE2d 637. Before liability can be imposed upon a defendant thereunder it must be established that the defendant *either through his or its servant, or otherwise,* wilfully violated the terms of the Act, but where an employer knows that an instrumentality within the terms of the Act is being used by his or its employee the employer cannot escape the duty imposed by the Act by closing his or its eyes to the way in which it is being operated: Gundich v. Emerson-Comstock Co. (1960) 21 Ill2d 117, 171 NE2d 60. The Act deals with highly dangerous activities; it fixes independent duties of compliance upon the owner, contractor, subcontractor, foreman, or other person having charge of the activity involved; it fixes its own standards of liability; the duty of each party concerned is independent of the duty of others concerned; no one having a duty thereunder can escape his statutory liability by pointing to another's breach

81

of duty; if a party is otherwise liable thereunder he is liable regardless of the fault or liability (or lack thereof) of any other: Kennerly v. Shell Oil Co. (1958) 13 Ill2d 431, 150 NE2d 134. The legislature intended to hold liable those named persons stated in the Act who are in charge of the work and other persons, if there were any, having charge of the work: Gannon v. Chicago, M. & St. P. Ry. Co. (1961) 22 Ill2d 305, 175 NE2d 785. The defendants employers here may be guilty of an independent or concurrent wrong, and not solely under the doctrine of respondeat superior: Cf. 50 CJS, p 279. Their liability does not rest exclusively on the conduct of their employee Brozovich, under the doctrine of respondeat superior; Hayes v. Chicago Tel. Co. (1905) 218 Ill 414, 75 NE 1003 and other similar cases suggested by the defendants do not apply, and the verdict and judgment of not guilty as to him is not res judicata or a bar to recovery against them if they are otherwise liable.

These defendants argue that the undisputed evidence shows that they did not have charge of the work being performed. But, the evidence shows that they had undertaken by contract "to furnish all equipment and operators to complete the following . . . to remove walls and dispose of debris, and level property etc." This loader shovel was theirs. Brozovich, the operator thereof, was their employee. They controlled him. What supervision he may have had they provided or were chargeable with. We believe that their providing this shovel as an occasional or temporary scaffold for taking down the piece of pipe was merely an incidental part of the over-all service apparently undertaken by them in their proposal to William Wolfe. There is no evidence of any extra charge being made by the defendants for doing that particular thing, which extra charge they could have made under the terms of their contract if such was not otherwise in-

cluded. The contractor Wolfe could not give his orders directly to the operator of the shovel. If Wolfe wanted something done concerning the shovel, he had to speak to Leonard Kubinski. Leonard Kubinski knew of the practical usage or practice of raising men up in the bucket or shovel on this and other machines before, and apparently acquiesced therein. His absence physically from the scene at the time seems of no great significance. There is sufficient evidence from which the jury could reasonably conclude that these defendants had charge of the work involving the alleged violation, within the meaning of the statute. It was, at most, a disputed question of fact whether these defendants could be deemed to be in charge of the work within the meaning of the Act, and it was the province of the jury, under proper instructions, to make that determination: Gannon v. Chicago, M. & St. P. Ry. Co. (1961) 22 Ill2d 305, 175 NE2d 185; Lawler v. Pepper Const. Co. (1961) 33 Ill App2d 188, 178 NE2d 687; cf. Miller v. B. F. Goodrich Co. (1961) 295 F2d 667, CA 7th Ill. We believe Schmid v. U. S. etc. (1957) 154 F Supp 81 and Kiszkan v. The Texas Co. (1961) 22 Ill2d 326, 175 NE2d 401, referred to by the defendants on this point, to be inapplicable factually.

 Another ground for reversal urged is that this loader or shovel was not a scaffold, hoist or mechanical contrivance within the meaning of the Structural Work Act, Ch 48 Ill Rev Stats 1957, pars 60–69, and was being used for a purpose not included in the Act at the time of the accident. The evidence is clear that this loader with the bucket or shovel attached had in fact been used to lift the plaintiff on other occasions as well as this so that he could perform some work while in the shovel, and had been similarly so used to lift others, and this practice or usage was known to these defendants. This contention, accordingly, as to this particular use is not tenable. The defendants had

83

control over the shovel and its operator, and had knowledge, as subcontractors, that their employee Brozovich, had previously used it to lift men therein to work. Under these circumstances, the defendants were responsible for the safe erection, construction, placing, operating, and use for this particular purpose of this instrumentality, provided the evidence was sufficient to go to the jury on that question. In Bounougias v. Republic Steel Corp. (1960) 277 F2d 726, CA 7th, Ill, an overhead traveling crane, consisting of a trolley, control cab, and drum with a cable attached, installed in a building owned by the defendant Republic Steel, principally used to move its products about in the plant, was used as a temporary platform for painting the upper structure, as it had been similarly used on other occasions. The plaintiff, an employee of the painting contractor, was injured when he fell from the drum of this temporary platform. On the issue of the owner's liability with respect to furnishing or providing a safe, suitable and proper scaffold, etc., the Court of Appeals said, pp 731–732:

> "Republic's crane falls within the purview of the Act. We have been unable to find and counsel has failed to cite any Illinois case in which the facts are similar to the instant case. The crane had been literally 'erected or constructed' and used for the repairing and painting of Republic's building. It was positioned temporarily just as any scaffold would be constructed or positioned temporarily to accomplish its purpose. The Act when liberally construed uses the words 'erected and constructed' in the sense of being furnished. It was furnished and intended to be used, at the time plaintiff was injured, as a scaffold. The aim of the statute is to provide workmen with a safe place to work. To construe the Act as not applicable would be in

84

complete opposition to the Illinois court's liberal construction of the Act to protect workmen in an extra hazardous occupation."

Similarly in the present case, there was sufficient evidence from which the jury could find that this instrumentality had been literally "erected and constructed" (furnished) and used for the work being done. It was positioned temporarily as any scaffold would be temporarily to accomplish its then purpose. "Erected and constructed" means furnished, and it was furnished. It was intended to be used, at the time the plaintiff was injured, as a scaffold, albeit temporary. It was a place to work, albeit temporary. Whatever its primary or principal purpose may have been, and whether it should or should not have been used for another purpose, the jury could well have found, and did, that here, under these facts and circumstances, it was intended to be and was a scaffold, or hoist, or support, or other mechanical contrivance erected or constructed (furnished) for use in connection with the removal of the building. It was not merely a part of the construction work itself. Two of the cases the defendants refer to on this, representative of the others,—Wright v. Smith, 152 App Div 476, 137 NYS 264, and Brady v. Pennsylvania Steel Co., 134 App Div 372, 119 NYS 75,—are distinguished in Bounougias v. Republic Steel Corp., supra. A statute itself affords the best means of its own exposition: American Steel Foundries v. Gordon et al. (1949) 404 Ill 174, 88 NE2d 465.

■ The defendants say that at the time of the accident the plaintiff was not engaged in removing a building, but in detaching a pipe to be sold by his employer, Wolfe, as salvage, and that this kind of work was not within the Structural Work Act. We believe, as we've said, there was evidence from which

it could properly be inferred that these defendants understood Wolfe was salvaging pipe, and that the salvaging or aiding therein was apparently within the scope of Kubinskis' contract with Wolfe as construed by the practical acts of the parties. The defendants at the time were evidently cooperating or acquiescing in Wolfe's removing and salvaging the pipe rather than just destroying it by simply knocking the beam and pipe down, which could have been done with this same machine. The defendants' general work could not be completed unless the walls were removed and the property levelled, and removing or salvaging the pipe, if that was desired, was merely incidental to the main operation. Under the circumstances, it cannot properly be said that this instrumentality was being used for a purpose not included in the Structural Work Act. The language of their contract "to furnish all equipment and operators to complete the following . . . to remove walls and dispose of debris, and level property . . . in a substantial and workmanlike manner" is general and broad in character. Similarly, "removal . . . of any . . . building" in the Act is general and inclusive. The jury was not required, nor are we, to seek to fragment, dissect, and distinguish out the various and sundry possible integral elements, or phases, or components of the general process of removing walls or buildings when the parties themselves have by their contract and practical acts not tried to make any fine subdivisions or nice distinctions or to draw any discernible lines between what is within and what is without their contract or the Act.

The defendants say there is a complete absence of proof that a wilful violation of the Structural Work Act proximately caused the plaintiff's injuries, and that his injuries were not caused by a scaffold, hoist, or mechanical contrivance within the meaning of the Act but rather by the work itself. The

statute not defining what shall constitute a safe, suitable, and proper scaffold, etc., the question then must necessarily be left to the jury for determination as one of fact: Schultz v. Henry Ericsson Co. (1914) 264 Ill 156, 106 NE 236, "Illinois Scaffold Act Liability," 50 Ill Bar Jour, p 1092, Aug, 1962. As to whether this instrumentality so used here as a scaffold, or hoist, or support, or other mechanical contrivance, was erected and constructed (furnished) in a safe, suitable, and proper manner and was so erected and constructed, placed and operated, as to give proper and adequate protection to the plaintiff employed or engaged thereon, we believe there was a sufficient evidentiary basis from which the jury could reasonably have concluded that it was not. It is true there was a dispute as to whether the plaintiff in striking the pipe with the sledge hammer lost his balance and fell from the shovel, or whether the plaintiff's blows broke the pipe causing one piece to strike the shovel, which, in turn, caused it to tilt, thus causing the plaintiff to fall out and down. And there were other controverted facts. It is also true there was no evidence of any defect or damage to the shovel itself as a shovel or loader before or after the accident. Those and other related factual matters were, however, primarily, problems for the jury in determining if this instrumentality so used here as a scaffold, or hoist, or support, or mechanical contrivance, was furnished in a safe, suitable, and proper manner for that purpose and gave proper and adequate protection to the plaintiff. In finding for the plaintiff, they have found as an ultimate fact that this instrumentality so used here was not so furnished, and there is evidence from which they could have reasonably so concluded.

 "Wilful violations" of the Act or "wilful failure to comply with any of its provisions" means "knowing" violation or "knowing" failure to comply;

to constitute a wilful violation it is not necessary that there should have been a reckless disregard of its provisions; the employer is liable when the dangerous condition is known to him, or when by the exercise of reasonable care the existence of such dangerous condition could have been discovered and become known to him: Schultz v. Henry Ericsson Co. (1914), 264 Ill 156, 106 NE 236; Kennerly v. Shell Oil Co. (1958) 13 Ill2d 431, 150 NE2d 134; Gundich v. Emerson-Comstock Co. (1960) 21 Ill2d 117, 171 NE2d 60; Gannon v. Chicago, M. & St. P. Ry. Co. (1961) 22 Ill2d 305, 175 NE2d 785; Lawler v. Pepper Const. Co. (1961) 33 Ill App2d 188, 178 NE2d 687. There is sufficient evidence from which the jury could reasonably have concluded the defendants knew of this dangerous condition (if it was dangerous) and hence there was a wilful violation or failure to comply.

The defendants suggest that neither the shovel or the operation of the same or its use as a scaffold etc. contributed in any way to the plaintiff's injuries, and if the plaintiff had not broken the pipe connection nothing would have happened. What is the proximate cause of the injury here, as in most cases where it is in issue, is ordinarily a question of fact for the jury, to be determined from a consideration of all of the attending facts and circumstances; it only becomes a question of law when the facts are not only not disputed but also are such that there can be no difference in the judgment of reasonable men in the inference to be drawn therefrom: Schultz v. Henry Ericsson Co. (1914) 264 Ill 156, 106 NE 236; Fetterman v. Production Steel Co. et al. (1954) 4 Ill App2d 403, 124 NE2d 637; Cf. Merlo et al. v. Public Service Co. et al. (1942) 381 Ill 300, 215 NE2d 665. The jury's conclusion on proximate cause here is against the defendants, and there is a reasonable evidentiary basis therefor: Bounougias v. Republic Steel Corp.

(1960) 277 F2d 726, CA 7th Ill. The defendants violated the Act by knowingly furnishing this instrumentality as a scaffold, or hoist, or support, or mechanical contrivance in an unsafe, unsuitable, and improper manner, and which did not give proper and adequate protection to the plaintiff. Consent or acquiescence by them to that use is implied from their knowledge of the use. The jury could, from all the attending facts and circumstances, reasonably have found proximate cause, and they did. With one exception, all of the New York cases the defendants refer to on this, including Erickson v. Bradley Const. Co., 150 NYS 169, Adelstein v. Roebling Const. Co., 159 NYS 36, 95 Misc 125, Haughey v. Thatcher, 85 NYS 935, 89 App Div 375, and Broderick v. Cauldwell etc. Co., 301 NY 182, 93 NE2d 629, are distinguished in Bounougias v. Republic Steel Corp., supra.

 The verdict has a reasonable basis in the evidence, and is not contrary to the law applicable to the case. There is evidence which, standing alone and taken with all its intendments most favorable to the plaintiff, tends to support the material elements of his case. There is no complete absence of probative facts to support the inferences drawn and therefore the Court properly denied the motions for directed verdict and for judgment notwithstanding the verdict: Lindroth v. Walgreen Co. et al. (1950) 407 Ill 121, 94 NE2d 847.

The judgment is, accordingly, affirmed.

Affirmed.

WRIGHT, P. J. and SPIVEY, J., concur.